## J. B. LOBDELL, RESPONDENT, *v.* D. C. SIMPSON ET AL., APPELLANTS.

At common law, riparian proprietors were entitled to have the water naturally flowing over or past their land, continue so to flow without interruption or diminution.

But in California, owing to the peculiar situation of the lands therein, (belonging to the United States Government, but thrown open to the common use of miners and others) a different rule has properly been adopted. There the first appropriator of the water is held entitled without regard to the occupancy of the lands over which the water naturally flowed.

When a plaintiff claims water on the ground of prior appropriation, it is error in the Court to refuse an instruction to this effect: "The plaintiff is not entitled to any greater quantity of the water of Desert Creek than he actually appropriated prior to defendant's appropriation."

What would have been the rule if plaintiff had claimed by reason of occupancy of the land, and as riparian proprietor? Query.

Whether defendant could derive any right by conveyance from an Indian? Query.

The first appropriator has the right to all water appropriated by him as against subsequent appropriators, and has the right to erect dams, divert water, etc., before any subsequent appropriation, but not to make any new dams or diversions of water after a subsequent appropriation.

A second appropriator has a right to have the water continue to flow as it flowed when he appropriated.

Plaintiff takes up land on a stream from which a part of the water has already been diverted by a ditch and dam. Subsequently defendant takes up the land on which the ditch and dam are situated. The plaintiff has no right to remove the dam.

APPEAL from the District Court of the Ninth Judicial District, Esmeralda County, Hon. S. H. WRIGHT, Judge of the Second Judicial District, presiding.

The plaintiff took up a piece of land on Desert Creek, for agricultural purposes, and used the waters of the creek for purposes of

irrigation. Subsequently the defendants took up a piece of the public land higher up, and on or near the same creek, and also used the waters of the creek for irrigation. The plaintiff brought suit against the defendants, praying for damages for past diversion of water, and an injunction against the future diversion of the waters of Desert Creek from his (plaintiff's) land. The plaintiff, to sustain his action, alleges prior appropriation of the waters of Desert Creek to the extent of 300 inches, and the subsequent appropriation by defendants of the waters of the creek so as to diminish plaintiff's supply below 300 inches.

The defendants, by way of answer, say that part of the waters of Desert Creek, long prior to the time plaintiff took up his land, had been appropriated at a point above plaintiff's claim. They deny that they have ever diverted any part of the waters of Desert Creek. On the contrary they aver that many years before either plaintiff or themselves had located their ranches, a dam had been erected across the channel of Desert Creek, which diverted a portion of its waters from the natural bed of the stream, and turned them over the land now occupied by defendants. That defendants had merely used the water turned over their premises by this old dam. That they had neither enlarged the dam nor the ditch running from the dam. That from natural causes the flow of water had, to some extent, been obstructed in the ditch leading to their place, and their supply was less now than when they took up their ranch in 1861.

On the trial the defendants attempted to show that the dam in the stream which plaintiff charged to have been erected by them was, in fact, erected by Indians before either the plaintiff's claim or their claim had been settled on. That they purchased from an Indian the right to the water as it then flowed in the ditch leading from this old dam, and located the land on which this ditch discharged itself. On the trial plaintiff objected to defendants' showing any right derived from an Indian.

*Aldrich & DeLong*, for Appellant, made a number of points not passed on by the Court. That an Indian has the right to appropriate water, and to transfer the possession thereof, was maintained, and the opinion of Chief Justice Hastings, in case of *Sunol* v. *Hepburn*, (1 Cal. 285) cited.

The Court erred in refusing to instruct the jury that plaintiff was not entitled to any greater quantity of the water of Desert Creek than that he actually appropriated before the defendants' appropriation. (*Ortman* v. *Dixon*, 13 Cal. 36 ; *White* v. *Todd's Valley Water Co.* 8 Cal. 444 ; *Butte Canal and Ditch Co.* v. *Vaughn*, 11 Cal. 153 ; *Kidd* v. *Laird*, 15 Cal. 179.)

*Quint & Hardy*, for Respondents.

Indians have never been held capable of selling or transferring real estate, except to the Government. (3d Kent, 457 to 486.)

It would seem that the right to use water and transfer it, is in the same category. (See 1 Cal. 274, and *Hicks* v. *Coleman*, 23 Cal.

The first instruction asked by defendants was properly refused for two reasons :

1st. It was too broad, and calculated to mislead the jury.

2d. There is nothing. in the record to show its applicability to the case on trial.

Opinion by LEWIS, C. J., BEATTY, J., concurring.

" Every proprietor of lands on the banks of a river," says Chancellor Kent, " has naturally an equal right to the use of the water which flows in the stream adjacent to his lands, as it was wont to run, without diminution or alteration. No proprietor has a right to use the water to the prejudice of other proprietors above or below him unless he has a prior right to divert it ; or a title to some exclusive enjoyment. He has no property in the water itself, but a simple usufruct while it passes along. *Aqua curret et debet currere ut currere solebat* is the language of the law. Without the consent of the adjoining proprietors he cannot divert or diminish the quantity of the water which would otherwise descend to the proprietor below, nor throw the water back upon the proprietors above without a grant, or an uninterrupted enjoyment of twenty years, which is an evidence of it." This is the clear and well-settled general doctrine of the common law of water courses. The quantity of water in a natural stream could in no case be diminished to the prejudice of other proprietors, except when necessary for domestic uses, and for the watering of stock. If a reasonable use of the water for

these purposes materially diminished the quantity to the prejudice of the proprietors below, no action would lie, because these were considered privileged uses. Some of the Courts have held that it might also be taken for the purpose of irrigating land, though the proprietors below were prejudiced thereby ; the weight of authorities, however, would seem to be against those decisions.

Whilst every riparian proprietor has a right to the reasonable use of the water for any purpose which does not diminish its quantity or deteriorate its quality to the injury of those below him on the same stream, he has no right to use or detain it upon his own land for any purpose which would result prejudicially to any other ; *sic utere tuo ut alienum non loedas* is the maxim which the Courts recognize as a rule which must govern riparian proprietors in the use of running water. The anomalous condition of the settlers and miners upon the public land in California has induced the Courts of that State to depart from the strict rules of the common law, and to recognize priority of appropriation as a foundation of right to the use of running water. The rule adopted in California, when viewed in the light of the necessities which induced its adoption, is founded upon the clearest principles of justice. The right to land in that State, resting as it did for years upon no other titles but that of prior occupation and appropriation, the right to the use of running water was also acquired in the same way. So the doctrine is well settled in California that as between persons claiming water, merely by the appropriation of the water itself, he has the best right who is first in time. "We presume that it is not to be doubted," says Judge Baldwin, in the case of *Ortman* v. *Dixon et als.*, 13 Cal. 38, " that the defendants having first appropriated the water for their mill purposes, are entitled to it, to the extent appropriated, and for those purposes to the exclusion of any subsequent appropriation of it, for the same or any other use. We hold the absolute property in such cases to pass by appropriation as it would pass by grant." So in the case of *Butte Canal and Ditch Company* v. *Vaughn*, 11 Cal. 152, Mr. Justice Field, in delivering the opinion of the Court, says : " The first appropriator of the water of a stream passing through the public lands in this State has the right to insist that the water shall be subject to his use and enjoyment to

the extent of his original appropriation, and that its quality shall not be impaired so as to defeat the purpose of its appropriation.

In this action the plaintiff seems to have relied solely upon his prior appropriation of the waters of Desert Creek. No rights by virtue of his riparian proprietorship seem to have been claimed. True, in the amended complaint it is alleged that the natural channel of the stream passed through his land, and that the waters of the creek naturally flowed into and upon his premises. It is admitted, however, in the record, that he had no title to the premises, except as a mere occupant of public land, and he does not claim that thereby he is entitled to have all the waters of the creek flow in its natural channel upon his land, but simply that he is entitled to a certain quantity of water actually appropriated by him, to wit: three hundred inches. The entire complaint shows that nothing was claimed by the plaintiff by virtue of his occupancy of the land, but only by his actual appropriation of the water itself; and the prayer is that the defendants, their agents, servants, employés and all persons having or claiming to have interests by, through or under them, be enjoined from appropriating any of the water of Desert Creek *except the surplus over and above* what the ditches aforesaid will convey, to wit: three hundred inches of water with a six-inch pressure, and that the Court decree to the plaintiff the right to that quantity of the water of said creek. As the main issue raised by the pleadings is priority of appropriation, the Court erred in refusing to instruct the jury, as requested by the defendants, that " the plaintiff is not entitled to any greater quantity of the water of Desert Creek than he actually appropriated prior to the defendants' appropriation." What we might hold if the plaintiff had relied upon his rights as a riparian proprietor, and claimed the water of the creek by virtue of his ownership of the soil, it is unnecessary to say at present. We wish it understood, however, that the views expressed in this opinion are applicable only to those cases where the parties rely solely on the prior actual appropriation of water, which seems to be the case here. We do not deem it necessary to consider the question as to whether the Indian from whom the defendants claimed title could convey any right to them or not; for if the facts are correctly pleaded in the answer, and they can be established by proof, the defendants have

a right to divert the water used by them independent of any right existing in or derived from the Indian. It is alleged in the sworn answer of the defendants, that the dam and ditch complained of by the plaintiff, and by which they divert the water from the natural channel of the creek, existed not only when the plaintiff located upon the stream below, but when defendants located their land above plaintiff, and that their ditch had been in no wise enlarged or the dam raised since the location and appropriation by the respective parties plaintiff and defendants. The first appropriator of the water of a stream has undoubtedly a right under the decisions in California to the quantity of water actually appropriated by him as against any one subsequently appropriating any of the water of the same stream, and he has a right to remove any obstructions from the natural channel. But so soon as others locate upon the stream or appropriate the water, the first locator has no right to make any change in the channel, either to raise or lower any dams, or to close up any ditches which may have existed at the time of his own and the location of others, if others are injured thereby. In other words, a person locating upon a stream and appropriating the water has a right to have it flow (so far as the natural channel is concerned) in precisely the same manner as it did when he located ; and no prior locator has any right to make any such change in the natural channel as will injure subsequent appropriators of the same water. If, as in this case, there was a dam in the stream, and a ditch conveying a certain quantity of water upon public and unoccupied land above the plaintiff at the time the plaintiff located, and he had not disturbed either, and the defendants take up the land and ditch, the plaintiff would have no right after such location by the defendants to destroy the dam or close up the ditch of defendants, if by so doing the defendants would be damaged. Neither would the defendants have any right to raise their dam or enlarge their ditch so as to deprive the plaintiff of the quantity of water appropriated by him. But they, on the other hand, have a right to claim that no dam which existed at the time of their location shall be torn down, if the tearing of it down would prejudice them.

The evidence in the case not being brought up, we are unable to determine what the rights of the defendants are ; but if the facts

exist as set forth in the answer, they have a right to maintain the dam as they found it at the time of their location. However, as the judgment must be reversed upon the error of the Court in refusing to give the instruction above referred to, we deem it unnecessary to give the question any further consideration.

Judgment reversed, and new trial ordered.