STATE Ex Rel. HINCKLEY v. SIXTH JUDICIAL
DISTRICT COURT in and for Humboldt
County, Et Al.

No. 2915

July 3, 1931.                              1 P. (2d) 105.

*Milton B. Badt* and *James Dysart*, for Relator:

*Gray Mashburn,* Attorney-General, and *W. T. Mathews,* Deputy Attorney-General, for Respondents:

## OPINION

By the Court, COLEMAN, C. J.:

This is an original proceeding in certiorari to review an order adjudging relator guilty of contempt of court for violating an order of determination in the matter

of the determination of the relative rights of the appropriators of the waters of the Humboldt river stream system, made pursuant to the water law of the state. Stats. 1913, p. 192, as amended. See N. C. L. sec. 7890 et seq.

On June 27, 1930, contempt proceedings were instituted in the sixth judicial district court of Nevada, in and for Humboldt County, upon the complaint of one J. A. Millar, wherein it is alleged that on January 17, 1923, there was filed with the clerk of said court by the then state engineer a final order of determination in the matter of the determination of the relative rights of the claimants and appropriators of the waters of the Humboldt river stream system and its tributaries; that W. V. Hollan was at all times mentioned in the complaint a duly appointed, qualified, and acting water commissioner, and as such an officer of the court in distributing the waters of the Humboldt river stream system and its tributaries; that prior to June 15, 1930, there had been constructed a ditch known as the Highline ditch, which diverted water from the Humboldt river, in which had been constructed a spillway and floodgate; that on the 15th day of June, 1930, W. V. Hollan, acting as water commissioner as aforesaid, removed the boards from said spillway and floodgate and thereby prevented the waters of said river from passing down and through said ditch and past said spillway and floodgate, and simultaneously posted a notice at said point, as such water commissioner, of his action, and warning all persons not to interfere with said spillway; that thereafter on said 15th day of June, 1930, James McDermott and John Doe Welch did unlawfully, knowingly, willfully and contemptuously replace and caused to be replaced the boards in said spillway and floodgate, and did thereby cause the waters of said Humboldt river to flow through said ditch and below the point in said ditch where said spillway and floodgate were constructed and down to and upon the lands of the Humboldt Land & Cattle Company, a corporation; that Grayson Hinckley did

on said day knowingly, unlawfully, willfully, and contemptuously encourage and order said defendants McDermott and Welch to do said contemptuous act; that the acts of said defendants, and each of them, prevented said Hollan, as such water commissioner and officer of the court, from distributing the waters of the Humboldt river pursuant to the said final order of determination.

Upon the filing of the complaint aforesaid, an order directing the defendants to show cause why they should not be punished for contempt of court was entered.

In due time the defendants appeared and demurred to the complaint. The demurrer having been overruled, the defendants filed a joint answer to the complaint, in which they denied that they had committed any act constituting contempt and affirmatively alleged matters which will be hereinafter referred to.

The ditch in which is the spillway mentioned has its headgate something over one and one-half miles above the spillway, and it is contended by relator, among other things, that between the headgate and the spillway a portion of the water which was in the ditch found its way therein at a point about one-third of the distance between the headgate and the spillway, because of the fact that the river is higher at that point than is the ditch. It is also a fact that the relator removed or caused to be removed a portion of the obstruction placed in the headgate to enable a portion of the water of the stream to flow into the ditch, after the officer had undertaken to close such headgate and posted a notice thereon to that effect, though the complaint in the contempt proceedings does not so charge. In this connection it·is said that the water which thus got into the ditch is captured water, and hence the water commissioner had no control over it and no right to remove the boards from the spillway. In support of this contention it is urged that the authority of the officer was limited to the provisions of section 7939, N. C. L. The section mentioned, so far as it is material, reads:

"It shall be the duty of the state engineer to divide

or cause to be divided the waters of the natural streams * * * among the several ditches and reservoirs taking water therefrom, according to the rights of each * * * and to shut or fasten, or to cause to be shut or fastened, the head gates or ditches. * * * "

The statute does not expressly authorize the officer to open a spillway so as to permit water improperly or illegally in a ditch to return to the stream system.

In determining this question, we must look to the intention of the legislature in enacting the water law. In Vineyard Land & Stock Co. v. District Court, 42 Nev. 1, 171 P. 166, we held that the proceeding under the water law is a quasi public proceeding, wherein all claimants to the use of water of a stream system may have their claims adjudicated, to the end that the waters of the stream may be distributed under public supervision without needless waste or controversy. In other words, it was the intention of the legislature that the people who are entitled to the use of the waters of a stream system actually get it without needless waste or controversy. The statute must be interpreted in the light of that intention. This court, in State v. Ross, 20 Nev. 61, 14 P. 827, and other cases, has held that the intent of a statute will prevail over the literal sense. Such is the well-recognized rule. 2 Lewis' Sutherland, Stat. Const. p. 694. Interpreting the statute according to its obvious intent, we must hold that the officer had the right to open the spillway.

It is a well-known rule of statutory construction that, whenever a power is given by statute, everything lawful and necessary to the effectual execution of the power is given by implication of law. State v. Great Northern Ry. Co., 68 Wash. 257, 123 P. 8.

The water thus flowing into the ditch was a portion of the water of the stream system. Under a long line of decisions in this and other western states no title can be acquired to the public waters of the state by capture or otherwise, but only a usufructuary right can be obtained therein. If there were any foundation for

the contention as to "captured" water, all that a man has to do in certain situations, to get more water than he is legally entitled to use, is to blast down a side of the mountain at a precipitous point into the river bed, which might require weeks to remove, and thus "capture" the entire flow of the river for the irrigating season. The statute makes it the duty of the state engineer, and the water commissioner working in pursuance of his order, to distribute the waters of the stream system, and it makes no exceptions in favor of any one or of any condition which may exist or be produced to defeat the purpose of the law.

It was the evident contention of the state in the lower court, in which the respondent court apparently acquiesced, that any interference on the part of relator with the water commissioner in the distribution of the water of the Humboldt river constituted a contempt of court, even though the water commissioner was not distributing the water in accordance with the order of determination. And such is the contention of the present attorney-general. We do not approve of this theory of the law.

Section 38 of the water law as amended (Stats. 1915, p. 381, 382, sec. 8; section 7928, N. C. L.) provides that from and after the filing of the order of determination and during the time the hearing of said order is pending, as in the instant matter, the water of the stream system shall be distributed in accordance with the terms of said order of determination; and section 36½ of the water law as amended (Stats. 1927, p. 337; section 7926, N. C. L.) provides that from and after the filing of such order of determination the distribution of the water of such stream system by the state engineer, his assistants, the water commissioners or their assistants, shall be under the supervision and control of the court, and they shall be deemed officers of the court in distributing water under and pursuant to the order of determination or pursuant to a decree of the court.

From a reading of the two amendments referred

to, it is seen that the water of the Humboldt river could' be properly and legally distributed by the officers mentioned only when done in accordance with the terms of the order of determination. If this was not being done by the officer, it was no contempt to replace the boards in the spillway. There is nothing in State v. District Court, 52 Nev. 270, 286 P. 418, intimating the contrary.

Upon the hearing in the contempt matter, the defendants sought to introduce evidence tending to show that their principal was entitled to the use of the amount of water which was flowing in the ditch, and hence was not guilty of any contempt.

The court sustained an objection to this line of testimony, and it is now contended that the court in so ruling not only committed error, but denied to the defendants the right to be heard in presenting their defense, and hence exceeded its jurisdiction, and that therefore the judgment is null and void.

In support of the contention put forth, relator relies upon the opinion in McClatchy v. Superior Court, 119 Cal. 413, 51 P. 696, 39 L. R. A. 691, and other California cases based upon it.

It was certainly error for the court to refuse to hear the evidence, for, if relator were taking water he had a right to take, there could be no contempt, and the only way for the court to determine that question was by the taking of testimony; however, we are not prepared to say that the court by its ruling divested itself of jurisdiction, or thereby so exceeded its jurisdiction as' to render its order null and void.

The opinion in the McClatchy Case, supra, is not convincing. Three of the seven justices dissented from the main opinion. One of the justices merely concurred in the judgment annulling the order under review, and observed that the case was a very close one, whereas Beatty, C. J., concurred in the judgment annulling the order for a reason not given in the main opinion; hence it will be seen that the opinion laying down the rule relied upon here is of but little weight, in fact of none,

except in so far as the reasoning thereof appeals to us.

It is true that the supreme court of California subsequently seemed to have accepted the opinion in that case as controlling, but with us there is a long line of decisions laying down the rule which should guide this court in determining the extent of its inquiry on certiorari. This question is settled by our civil practice act, which provides that our authority upon writ of certiorari shall not be extended further than to determine whether the inferior tribunal regularly pursued its authority. (Section 9237, N. C. L.)

The question before us seems to be a simple one. Did the lower court proceed regularly? The complaint charging contempt was filed, citation issued, and the defendants appeared. The court had jurisdiction of the subject matter and of the defendants; hence it had authority to proceed. The court heard testimony in support of the contempt charge, after which testimony in behalf of the defendants was offered, amounting to many thousand words. During the taking of the testimony, both for and against the defendants, numerous objections were made and ruled upon, as was the objection to the testimony in question.

It is not contended that the court did not have jurisdiction to rule upon objections to tendered evidence as a general proposition, but that the court ruled incorrectly in the matter in question and by so doing divested itself of jurisdiction. This court has often taken the contrary view. In Phillips v. Welch, 12 Nev. 158, 170, it was said, in speaking of a determination by the district court in a contempt proceeding: "It may have erred. Whether it did or did not, it is not our province, in this proceeding, to inquire. We are prohibited by the statute from investigating this question. Even admitting that the court erred in the conclusions it reached, yet all the authorities above cited hold that error in judgment, in respect to a question which the court is authorized to investigate and determine, does not, by any means, constitute an excess of jurisdiction. If it did, then every error

committed by any inferior tribunal, in the course of judicial investigations, would be in excess of jurisdiction, and the writ of certiorari would be converted into a writ of error instead of remaining, where the statute has placed it, a writ of review. * * * "

These views are sustained by many decisions of this court, as shown in State v. District Court, 32 Nev. 189, 105 P. 1022. See, also, State v. McFadden, 43 Nev. 140, 182 P. 745.

We do not think the court exceeded its jurisdiction in rejecting the tendered evidence.

It is also contended that the court exceeded its jurisdiction in finding the relator guilty of a contempt not charged, in that he was found guilty of opening the headgate to the ditch, with which he was not charged. This contention seems to be well founded, but we think it appears that he was also found guilty of the act charged. This being true, the judgment is not absolutely void.

It is further urged that the court found that half of the water in the ditch was legally there; hence the court could not adjudge relator in contempt. We do not so interpret the finding of the court. It is true that the court stated that, if a certain contention is true, half the water was illegally in the ditch. But the court went no further. We think there is no merit in this contention.

The court, after finding relator guilty of contempt, ordered that he pay a fine, and for failure to do so that he be incarcerated in the county jail until the fine be paid. It is insisted that the court was without jurisdiction to render such a judgment. Section 8950, N. C. L., provides that, where one is adjudged guilty of contempt, a fine may be imposed not to exceed $500, or that he may be imprisoned not exceeding twenty-five days, or both. Section 8951 provides for imprisonment until the act ordered to be performed is complied with, but that does not apply in the instant case.

The judgment assessing the fine is valid, but that

portion of it directing that the relator be incarcerated until the fine is paid is void. So much of the judgment as imposes a jail sentence is hereby annulled.

It is ordered that the proceeding as to the fine be and remain in full force and effect.