## UNITED STATES (PERSHING COUNTY WATER CONSERVATION DIST. OF NEVADA et al., Interveners) v. HUMBOLDT LOVELOCK IRR. LIGHT & POWER CO.*

No. 8695.

Circuit Court of Appeals, Ninth Circuit.
May 31, 1938.

Carl McFarland, Asst. Atty. Gen., C. W. Leaphart, Clifford E. Fix, and W. D.

*Rehearing denied July 18, 1938.

Donnelly, Attys., Department of Justice, all of Washington, D. C., E. P. Carville, U. S. Atty., of Reno, Nev., and Roy W. Stoddard, Sp. Asst. to Atty. Gen., for the United States.

Prince A. Hawkins, Robert Z. Hawkins, and Hawkins, Mayotte, & Hawkins, all of Reno, Nev., and Clarence M. Hawkins, of Oakland, Cal., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

HANEY, Circuit Judge.

Appeal is taken from an order dismissing a bill of complaint filed by the United States, hereinafter referred to as appellant, and its motion for an injunction pendente lite.

In what is called the "arid state" of Nevada "there are but four small streams that pretend to flow for a comparatively short distance continuously throughout the year, one being the Humboldt River, whose supply of water is utilized to the greatest possible extent". Pitt v. Scrugham, 44 Nev. 418, 426, 195 P. 1101, 1103. That river "extends for a distance of about 300 miles, is in five counties and three judicial districts" and in 1914 it was estimated that there were from 700 to 1000 users of the water of such river. Ormsby County v. Kearney, 37 Nev. 314, 337, 142 P. 803. Involved herein are water rights in that stream.

The bill alleged that appellee is a Nevada corporation; that appellant, prior to and on April 23, 1937 was, and continuously since that date has been "the owner of about 52,900 acre feet of the waters of the Humboldt River in Nevada"; that the "water rights were originally appropriated and diverted from the Humboldt River and used for the irrigation of lands situated in the neighborhood of the Towns of Battle Mountain and Imlay, Nevada" and that the priority dates of appropriation of such waters were "practically" all prior to 1908; and that appellant "prior to September 8, 1936, purchased these water rights."

It is further alleged that appellant "since September 8, 1936 has had the right, under permits duly issued by the State Engineer of Nevada, to change the place of use and point of diversion of said water for use upon lands within the boundaries of the Pershing County Water Conservation District of Nevada, * * * [a Nevada] irrigation district"; that "under the

continuous flow basis of distribution of the waters of the Humboldt River adopted by the State Engineer of Nevada for the irrigation season of 1937" appellant had the right to divert a maximum flow of water specified in second feet for designated periods of time; and that under "the terms of a written contract dated October 1, 1934" between appellant and the irrigation district, appellant "is obligated to deliver" such water to the "intakes of the various ditches used for the irrigation of the lands within" the irrigation district.

The bill also alleges that appellee "is the owner of two reservoirs * * * situated * * * upstream from irrigated lands within the boundaries of [the irrigation district] and has two permits to divert water from the Humboldt River to store in its said reservoirs to the extent of about 50,000 acre feet with priorities of the years 1908 and 1911"; and that appellant's water rights "are all prior to and superior to the storage rights of" appellee.

It is also alleged in the bill that commencing "on April 23, 1937 and continuously thereafter", during which time appellant delivered water, pursuant to the contract, to the irrigation district, appellee "wrongfully, forcibly and in defiance of the lawful orders and control of the State Engineer of Nevada, and in defiance of the property rights of" appellant, took and diverted, "water belonging to" appellant, which amounted to approximately 4,075-acre feet during the time from April 23, 1937 to the time when the bill was filed on May 27, 1937; that such "wrongful and unlawful taking and storing of water * * * has caused and will continue to cause irreparable damage in loss of crops to members of the" irrigation district, and has prevented and will prevent appellant "from fulfilling the obligations of its" contract; and that appellee threatens to and will, unless enjoined, "continue to so divert, take, store and convert to its own use" such waters.

Appellant prayed for (1) an injunction pendente lite enjoining appellee from interfering with waters belonging to appellant; (2) a permanent injunction to the same effect; and (3) appointment of a water master for the purpose of enforcing the orders of the court, including an order requiring the release of the water unlawfully diverted and stored by appellee.

On May 29, 1937, appellant filed a motion for an injunction pendente lite, with

an affidavit of L. J. Foster, engineer in charge of construction of the Humboldt Federal Reclamation Project, and an affidavit of S. R. Marean, the hydrographer of the same project. Appellant gave notice that the motion would be heard on June 7, 1937, which notice contained the statement that in presenting the motion, appellant would rely on the verified bill, the affidavits and testimony of ten witnesses.

On June 5, 1937, the irrigation district and Union Canal Ditch Company, a Nevada corporation, with W. W. Carpenter on their behalf and on behalf of all other water users of the irrigation district, each filed a petition for an order permitting the filing of a bill of intervention. Each petition was granted by orders made on the same day, and each filed a bill of intervention. On the same date, the ditch company and Carpenter filed a motion for an injunction pendente lite, with Carpenter's affidavit, and gave notice that the motion would be presented at the same time that appellant presented its motion.

On June 7, 1937, appellee filed an answer and counterclaim. Before relating the facts, pertinent here, appearing from the affidavits and the verified answer and counterclaim, certain statutes of Nevada which are explanatory, should be noticed.

The water code of Nevada (Act of March 22, 1913, Laws of Nevada, 1913, Ch. 140, p. 192), as amended, Comp.Laws Nev. § 7890 et seq., created the office of state engineer, provided a procedure for determining water rights by him, and required the state engineer to make and record in his office an order determining and establishing the several rights to the waters of the stream in controversy. Thereafter, the state engineer is required to file a certified copy of the order, the original evidence and transcript of testimony, with the ex officio clerk of the district court, obtain an order of the district court fixing the time for hearing of the order, and to mail copies of the order to the interested parties. Interested parties who are dissatisfied with the order may file exceptions to the order. The court shall then hear the proceedings and enter findings and a decree approving or modifying the order of the state engineer. The court's decree is final and conclusive upon all persons and rights lawfully embraced within the adjudication. In the event that suit is brought in a district court for the determination of water rights, it is provided that all persons claiming such rights shall be made parties thereto.

The water rights, to which appellant allegedly became the owner, with priority dates prior to 1908, originally included right of use by direct diversion only, and included no storage rights. Appellee's rights, with priority dates of 1908 and 1911, included storage rights. Its reservoirs were completed about 1912.

On November 22, 1916, appellee commenced a suit in a state court (hereafter referred to as the first state court suit) against the state engineer and the water commissioner, and involved the same water rights of appellee, mentioned herein. The complaint is not before us, but on November 27, 1918, the state court made a decree, perpetually enjoining the state engineer and all persons acting under his authority, from in any way interfering with appellee's dam, or rights to divert and store waters. The record discloses no explanation for the suit.

On September 29, 1922, the state engineer made his final order and determination of ownership of water rights in the Humboldt River stream system,[1] and filed it in the state court on January 17, 1923. On October 20, 1931, the state court in that proceeding (hereafter called the second state court suit) made its findings and decree.[2] By that decree the water rights, now alleged to be owned by appellant, were adjudicated, as were the rights of appellee. The decree provided that for the "purpose of administration and distribution of the waters of the Humboldt stream system and its tributaries" the state engineer should fix the date of the beginning of the irrigation system; that the stream system was divided into two districts, and that distribution between the districts should be made in a manner specified in the decree. The decree also provided:

"That the rights of appropriation hereby confirmed are appurtenant to the lands herein described for irrigation purposes, and the right of use of the waters of said

1 The proceeding apparently was commenced on May 21, 1913. Ormsby. County v. Kearney, 37 Nev. 314, 359, 142 P. 803.

2 That decree was modified to some extent on October 8, 1935. Part of the decree was also declared void in Ruddell v. Sixth Judicial District Court, 54 Nev. 363, 17 P.2d 693.

stream and its tributaries by virtue of such rights of appropriation are limited and confined to the irrigation of the lands described herein to the extent of said lands as herein set forth, and the priorities herein confirmed confer no right of use of the waters of said stream, and its tributaries, on the lands other than those specified tracts to which such rights of appropriation are herein set forth as appurtenant. The right of a water user to change the place of use of a vested water right, in the manner, now or hereafter, provided or permitted by law shall not be prohibited or affected by this decree."

Sometime prior to 1934, appellant began construction of a reclamation project, which contemplated the construction and maintenance of a dam across the Humboldt River, and thereby creating a reservoir for storage of waters of the stream, and called the Rye Patch Reservoir. The water rights, of which appellant claims now to be the owner, sometime prior to March 9, 1934, were transferred to the irrigation district. On that date, the irrigation district filed with the state engineer applications for permits "to change the point of diversion of" such waters. On June 23, 1934, the irrigation district filed a corrected application for a storage permit. On October 1, 1934, appellant and the irrigation district made the contract mentioned in the bill. Under the terms of the contract appellant was obligated to acquire the water rights then owned by the district, and to deliver water to the owners of the land within the irrigation district.

On October 8, 1934, the applications of the irrigation district for permits to change the point of diversion were granted, subject to certain conditions, including the following:

"The water transferred shall not be stored and shall be diverted from the Humboldt River into ditches now used for the irrigation of the lands within" the irrigation district; and "The water may be transferred during the irrigation season only and at such times when the same can be used beneficially upon the lands within" the irrigation district. The application of the irrigation district for the storage permit was granted by the state engineer on April 10, 1935, "subject to all vested rights and prior rights for storage on the Humboldt River Stream System". Upon a date not disclosed by the record, a purported conveyance of the wa-ter rights and storage right was made to appellant.

From about March 15, 1912, to September 15 of each year since 1912, appellee has not diverted water from the Humboldt River for storage. About March 15, 1937, appellee ceased diverting water for storage in its reservoirs. On April 23, 1937, appellee posted notices on its dam and headgates, notifying the state engineer, his assistant, and the water commissioner, that they had no authority or right to interfere or regulate the dam and headgates of appellee because of the injunction in the first state court suit. Simultaneously with the posting of the notice, appellee began diversion of the water of the Humboldt River for storage. On the following day appellee served on the state engineer a notice of final decree and perpetual injunction, to which was attached a copy of the decree in the first state court suit. The state engineer thereupon made no attempt to prevent appellee from diverting and storing water.

On April 27, 1937, appellee commenced an action in the state court (hereafter referred to as the third state court suit) against the state engineer, his assistant, the supervising water commissioner, the irrigation district, its president, its secretary, and two individuals (some of the other parties being sued in their official capacity and individually). Briefly, the complaint alleged that appellee had storage rights, that from March 15, 1937, to April 23, 1937, defendants therein, as a result of a conspiracy between them, wrongfully and unlawfully diverted 17,000-acre feet of water to which appellee was entitled, and had stored the same in Rye Patch Reservoir, in which the irrigation district claimed an ownership without any right whatever; that by reason of such unlawful acts, appellee would be unable to properly carry on its business during the 1937 season, to its damage in the total sum of $60,000; that defendants threaten to and will unless enjoined, prevent appellee from diverting and storing water to which it is entitled. The prayer asked an injunction enjoining defendants from (1) interfering with appellee's diversion and storage of waters to the extent of 49,770-acre feet, subject to the right of state officials to regulate diversion and storage by appellee when necessary to serve appropriators prior in time; (2) storing any water whatever in Rye Patch Reservoir; and (3) from stor-

ing any water in Rye Patch Reservoir under the rights claimed to have been acquired by the irrigation district, until appellee had stored all of its 49,770-acre feet of water. The prayer also asked exemplary, punitive and compensatory damages in the total sum of $60,000.

Apparently after March 15, 1937, and prior to July 16, 1937, appellee filed a petition in the second state court suit praying that the state engineer be ordered to desist from interfering with its dam. Subsequently it was adjudicated that such a proceeding could not be maintained in the second state court suit. Jahn v. Sixth Judicial District Court, Nev., 73 P.2d 499.

On May 27, 1937, the bill before us was filed. Appellant filed its motion for an injunction pendente lite on May 29, 1937; the irrigation district and the ditch company filed their bills of intervention on June 5, 1937; appellee filed its answer and counterclaim on June 7, 1937.

Hearing of appellant's motion began on June 7, 1937. Appellee stated objections to the hearing, which the trial court considered as a motion to dismiss. Two of the objections were that the bill failed to state facts sufficient to constitute a cause of suit, and that the bill should be dismissed because of the pendency of the third state court suit. It was conceded that appellant owned no land on which the water which could be obtained under the water rights alleged to be owned by the United States, could be used.

The trial court held that the bill failed "to set forth facts establishing ownership of property rights alleged to be invaded" and that "the rule of comity would make the State Court the proper forum for determination of any rights which appear from the pleadings in this case to be in issue". It denied the motion for injunction pendente lite, and dismissed the bill. Appellant, the irrigation district, the ditch company, and Carpenter then brought this appeal, of which only appellant has filed a brief.

Appellee, in effect, contends that the motion to dismiss was properly sustained because the bill does not allege that appellant owns any land, and since water rights in Nevada are appurtenant to the land only, appellant could own no water rights without owning land. Appellee contends that it owns a sufficient interest in the water rights to maintain the suit, but makes no attempt to define such interest.

■ In Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 321, 47 S.Ct. 600, 602, 71 L. Ed. 1069, it is said that "A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show." See, also, Hurn v. Oursler, 289 U. S. 238, 246, 53 S.Ct. 586, 589, 77 L.Ed. 1148. A bill is subject to dismissal unless it contains allegations of facts showing that the court has jurisdiction. KVOS, Inc., v. Associated Press, 299 U.S. 269, 277, 57 S.Ct. 197, 200, 81 L.Ed. 183. In addition, of course the bill must contain allegations of fact which show that the remedy at law is inadequate, or, in other words, showing that equitable relief should be granted. We may say, then, that ordinarily a bill is sufficient if it contains allegations of facts showing (1) that the court has jurisdiction; (2) ownership of a right by complainant; (3) violation of that right by defendant; and (4) that equitable relief should be granted.

Of these requisites, none are questioned, except the second, it being contended that the bill does not show ownership of a right in appellant. Indeed, we think the other requisites were stated with commendable brevity.

■ Whatever rights appellant may have, and the extent thereof, must be determined by the law of Nevada. 43 U.S.C.A. § 383; California Oregon Power Co. v. Cement Co., 295 U.S. 142, 155, 162, 55 S.Ct. 725, 728, 730, 79 L.Ed. 1356. We must, therefore, review the statutes and decisions of that state, to determine the questions herein. Much of the following, we think, is superfluous, but is given in explanation of appellee's contention.

Nevada was admitted into the union as a state in 1864. Two years later, it was held that where the right to the use of running water was based upon appropriation, and not upon an ownership in the soil, the first appropriator had the superior right. Lobdell v. Simpson, 2 Nev. 274, 90 Am.Dec. 537. The question as to whether the common law rule would be applied where one claimed rights by virtue of his ownership of the soil, was left undecided. It is here unimportant whether such common law rule was thereafter applied because in 1885 such common law rule was declared inapplicable. Jones v. Adams, 19 Nev. 78, 6 P. 442, 3 Am.St.Rep. 788. In that case the doctrine that prior appropriation is prior in right was applied as against

one owning the soil. Four years later the rule so announced was reaffirmed (Reno Smelting, Milling & Production Works v. Stevenson, 20 Nev. 269, 21 P. 317, 4 L.R. A., 60, 19 Am.St.Rep. 364), and was again reaffirmed in 1902. Walsh v. Wallace, 26 Nev. 299, 327, 67 P. 914, 99 Am.St.Rep. 692.' With regard to these decisions, the Nevada Supreme Court candidly stated that "the courts 'took the bull by the horns,' and in effect repealed the doctrine of riparian rights without awaiting the action of the Legislature." Vineyard Land & Stock Co. v. District Court, 42 Nev. 1, 22, 171 P. 166, 171.

In Walsh v. Wallace, supra, page 327, 67 P. page 917, the rule, specifying what constituted an appropriation of water, was first announced. The requirements set forth that "there must be an actual diversion of the same, with intent to apply it to a beneficial use, followed by an application to such use within a reasonable time."

Decisions with respect to the nature, effect and extent of water rights in Nevada are few. It has been observed "that practically all Nevada water rights are undefined, and therefore debatable". Bergman v. Kearney, D.C.Nev., 241 F. 884, 891. In State ex rel. Hinckley v. Sixth Judicial District Court, 53 Nev. 343, 352, 1 P.2d 105, 107, it was said that "Under a long line of decisions in this and other western states no title can be acquired to the public waters of the state by capture or otherwise, but only a usufructuary right can be obtained therein". In Prosole v. Steamboat Canal Co., 37 Nev. 154, 140 P. 720, 144 P. 744, a canal company diverted waters from a stream into its canal, and delivered such water upon lands "under" the canal for a specified consideration. One landowner for many years had obtained 50 inches of water per year, and when the canal company refused to deliver that amount of water in a later year, the landowner brought suit to compel the canal company to deliver the entire amount of 50 inches of water. The court held (page 722) that the "act of diversion on the part of the [canal] company could not * * * constitute a complete and valid appropriation"; that application of the water "to a beneficial use by the owners or possessors of irrigable lands constituted the culminating act in perfecting the appropriation"; that the canal "company can be regarded in no other light than that of the agent for those who, having in years past taken the wa-ter from the canal * * * have applied the same to beneficial use, and who have thus acquired a right of user, equivalent to an easement in the canal * * * to the extent of the amount of water delivered to them"; that "the rule that a prior appropriation constitutes a prior right applies to the appropriators of water, where the appropriation is made by and through the agency of another"; and that the landowner was "entitled to the amount of water formerly diverted and used by [him] so long as the delivery of that water to [him] did not interfere with those whose rights of appropriation under the same system were prior in point of time".

In that case the court also said that "absolute property in the waters of a natural stream does not exist; that the only right that one can acquire to such water and the only right by reason of which one can divert such waters from their natural water courses is for a usufructuary purpose and in cases of this character—the purpose of applying the water thus diverted to irrigable lands"; that "a water right for agricultural purposes, to be available and effective, must be attached to the land and become in a sense appurtenant thereto by actual application". It was further stated "that there is no absolute property in the waters of any natural water course or natural lake in the state"; that the canal company could "acquire no right to such waters, excepting the right to dispose of its use, and for this latter right they are entitled to reasonable monetary benefit"; and

"* * * When water is once disposed of by the original diverting agent—the canal company—to one who, being the owner of irrigable lands, applies the same to those lands, the power of control of the agent ceases, because his only power of control at all was based upon the obligation imposed upon him by law to dispose of the water to those who would actually apply it to the land. The right of a company of this character to divert public waters carries with it a corresponding duty, i. e., to dispose of its use for beneficial purposes. The one cannot exist without the performance of the other. In other words, there is no right created by the mere diversion of water from a public water course. This act of itself carries with it no right; but, when the act of diversion is coupled with the act of application to beneficial purpose, the appropriation is accomplished."

One other statement in that case requires notice. It was said: "As to whether or not the [canal company] had a property interest in the right to furnish the water is not an issue in the case at bar, and our observations made in the opinion are not to be considered as decisive of this matter". (Page 167, 144 P. page 744).

Such was the status of the decisions in Nevada regarding water rights. The history of conditions and causes for statutory enactments may be found in Re Water Rights in Humboldt River Stream System, 49 Nev. 357, 361, 362, 246 P. 692. "It was not until 1903 that an attempt was made to formulate a law applicable to the acquirement and appropriation of the public waters of the state. The act of 1903 (Laws 1903, c. 4) was superseded by the act of 1905 (Laws 1905, c. 46), and that act in turn gave way to the act of 1907 (Laws 1907, c. 18), and the act of 1907 was repealed by the act of 1913 (Laws 1913, c. 140)." Prosole v. Steamboat Canal Co., supra, page 160, 140 P. page 722.

The purposes of the 1913 act were stated in Ormsby County v. Kearney, 37 Nev. 314, 142 P. 803; Vineyard Land & Stock Co. v. District Court, 42 Nev. 1, 13, 171 P. 166; State ex rel. Hinckley v. Sixth Judicial District Court, 53 Nev. 343, 352, 1· P.2d 105; and Ruddell v. Sixth Judicial District Court, 54 Nev. 363, 367, 17 P.2d 693. It was substantially taken from the Nebraska, Oregon and Wyoming acts. Ormsby County v. Kearney, supra, pages 327, 340, 349, 350, 142 P. 803; Vineyard Land & Stock Co. v. District Court, supra, page 14, 171 P. 166; Bergman v. Kearney, D.C.Nev., 241 F. 884, 901. Parts of the act were held constitutional in Ormsby County v. Kearney, supra, and Vineyard Land & Stock Co. v. District Court, supra. In 1921, four sections of the act imposing judicial duties on the state engineer in determining the validity of water rights, were held unconstitutional in Pitt v. Scrugham, 44 Nev. 418, 195 P. 1101. Amendments of the act followed in 1921, and thereafter the act in its entirety was held to be valid. Humboldt Land & Cattle Co. v. District Court, 47 Nev. 396, 224 P. 612. Since enactment of the 1913 act, there have been about fourteen amendatory acts, amending and repealing various sections of the original act, and adding new sections thereto.

In addition to administrative provisions related above, certain sections dealt with water rights as such. Section 1 declared an already existing rule, that water "belongs to the public." Section 2 provides that, subject to existing rights, "all such water may be appropriated for beneficial use as provided in this act and not otherwise." Section 3 provides: "Beneficial use shall be the basis, the measure and the limit of the right to the use of water". Section 5 provides: "When the necessity for the use of water does not exist, the right to divert it ceases, and no person shall be permitted to divert or use the waters of this state except at such times as the water is required for a beneficial purpose." In section 8, as amended by St.1917, c. 190, it is provided that "Rights to the use of water shall be limited and restricted to so much thereof as may be necessary, when reasonably and economically used for irrigation and other beneficial purposes" and that failure to use the water for beneficial purposes for a period of five successive years, would constitute a forfeiture of the water rights. Section 7 provides in part: "Water may be stored for a beneficial purpose".

Section 4 provides:

"All water used in this state for beneficial purposes shall remain appurtenant to the place of use; provided, that if for any reason it should at any time become impracticable to beneficially or economically use water at the place to which it is appurtenant, said right may be severed from such place of use and simultaneously transferred and become appurtenant to other place or places of use, in the manner provided in this act, and not otherwise, without losing priority of right heretofore established; and provided, that the provisions of this section shall not apply in cases of ditch or canal companies which have appropriated water for diversion and transmission to the lands of private persons at an annual charge."

Section 59, as amended by St.1919, c. 59, requires a permit from the state engineer "to change the place of diversion, manner of use or place of use of water already appropriated".

It can be seen from the above, that a private person, in appellant's position, might be held to have a water right, based on the theory that such person holds a franchise from the state, similar to that declared in 3 Ore.Code, 1930, § 47-1001. However, in this case, no necessity for such a decision arises, because we think by the

law of Nevada, appellant is in a different position than a private person. The Nevada Irrigation District Act (Act of March 19, 1919, Ch. 64, St. of Nev., 1919, p. 84), provides for the organization in that state of irrigation districts. Section 55 of that act provides in part:

"The board of directors shall generally perform all such acts as shall be necessary to carry out the enlarged powers in the foregoing section enumerated. Said board may enter into obligations or contracts with the United States for the aforesaid purposes, and may provide therein for the delivery and distribution of water to the lands of such district under the aforesaid acts of Congress and the rules and regulations established thereunder. The contract may provide for the conveyance to the United States as partial consideration for the privileges obtained by the district under said contract of water rights or other property of the district * * *."

We think that statute authorizes conveyance to, and ownership by, appellant of the water rights in question, regardless of whether it does or does not own land to be irrigated.

■ The other principal contention of appellee is that the proceeding here can be determined in the state court suits. In this connection, it is first contended that the bill contemplated adjudication of water rights, which by virtue of the second state court suit and § 36½, as added by St.1927, c. 192, and § 54, as amended by St. 1929, c. 176, of the water act, were in custodia legis. Section 36½ provides:

"From and after the filing of the order of determination in the district court the distribution of water by the state engineer or by any of his assistants or by the water commissioners or their assistant shall, at all times, be under the supervision and control of the district court, and said officers and each of them shall, at all times, be deemed to be officers of the court in distributing water under and pursuant to the order of determination or under and pursuant to decree of the court."

Section 54 provides in part:

"It shall be the duty of the state engineer to divide or cause to be divided the waters of the natural streams or other sources of supply in the state among the several ditches and reservoirs taking water therefrom, according to the rights of each, respectively, in whole or in part, and to shut or fasten, or to cause to be shut or fastened, the headgates or ditches, and to regulate, or cause to be regulated, the controlling works of reservoirs, as may be necessary to insure a proper distribution of the waters thereof. Such state engineer shall have authority to regulate the distribution of water among the various users under any ditch or reservoir, whose rights have been adjudicated, or whose rights are listed with the clerk of any district court of this state pursuant to the terms of this act, actual cost of such regulation being paid by the ditch or reservoir receiving such service."

Whatever may have been the effect of those sections prior to the decree in the second state court suit (see State v. District Court, 52 Nev. 270, 286 P. 418; Cf. State ex rel. Hinckley v. Sixth Judicial District Court, supra), we think it is now settled that the second state court suit is no obstacle to this suit. Jahn v. Sixth Judicial District Court, Nev., 73 P.2d 499, 502.

■ Appellee also contends that by the rule of comity, this suit should await determination of the third state court suit. In Pacific Live Stock Co. v. Oregon Water Board, 241 U.S. 440, 447, 36 S.Ct. 637, 641, 60 L.Ed. 1084, the rule is thus stated:

"The rule that where the same matter is brought before courts of concurrent jurisdiction, the one first obtaining jurisdiction will retain it until the controversy is determined, to the entire exclusion of the other, and will maintain and protect its jurisdiction by an appropriate injunction, is confined in its operation to instances where both suits are substantially the same; that is to say, where there is substantial identity in the interests represented, in the rights asserted, and in the purposes sought."

The third state court suit has not substantially the same parties or substantially the same interests involved, we think. Since appellant owns the water rights claimed by it, those rights are not and could not be involved in the third state court suit, for appellant is not a party thereto.

■ Appellee presents some argument concerning appointment of a water master saying that if one is appointed, then there will be two water masters attempting to distribute the same water. Compare Harkin v. Brundage, 276 U.S. 36, 48 S.Ct. 268, 72 L.Ed. 457. In view of our decision, it is doubtful that any such difficulty will arise.

46

The appointment of a water master is here unnecessary. The injunction may enjoin appellee from interfering with diversion and storage of the water by appellant, and may enjoin appellee from diverting and storing such water. By such an injunction the court below will have ample power to protect appellant against unlawful invasions of its rights by appellee, without appointment of a water master.

Reversed and remanded with directions to overrule the motion to dismiss and grant the injunction pendente lite.