[No. 9284.    Department Two.    April 15, 1912.]

THE STATE OF WASHINGTON, *on the Relation of the Railroad Commission of Washington et al., Respondent,* v. GREAT NORTHERN RAILWAY COMPANY, *Appellant.*[1]

RAILROADS—REGULATION — FACILITIES — ORDER OF RAILROAD COMMISSION FOR DEPOT—VALIDITY—TIME FOR PERFORMANCE.    Under the railroad commission act, Rem. & Bal. Code, § 8629, making the commission an intermediate tribunal with original jurisdiction to hear and determine questions relating to the duty of common carriers to furnish additional transportation facilities, with power to order the construction of depots, its orders being final unless appealed from, under fixed penalties for violation of the order, the power to fix the time within which a depot must be completed is conferred by necessary implication.

RAILROADS — REGULATION — ORDER OF COMMISSION — FINALITY.    A railroad company having failed to avail itself of the right to appeal from a decision of the railroad commission ordering the construction of a depot within a specified time, is precluded from questioning its reasonableness or legality; the statute making the decision final if not appealed from.

RAILROADS—REGULATION—ORDERS OF RAILROAD COMMISSION—PENALTIES—STATUTES—CONSTRUCTION.    Under Rem. & Bal. Code, § 8631, prescribing a penalty if a railroad company "refuse or neglect" to obey any order of the railroad commission, the penalty is imposed for neglect, as well as refusal, to obey an order to construct a depot

[1]Reported in 123 Pac. 8.

within a specified time, and the penalty cannot be restricted to cases of wilful or contumacious refusal to obey an order; the word "neglect" meaning omission or forbearance, irrespective of carelessness or imprudence.

SAME—ACTION FOR PENALTIES—DEFENSES—EXCUSES FOR DELAY. A penalty for failing to obey an order of the railroad commission to construct a depot within a specified time attaches at the expiration of the time limited, and it is no defense that the depot was constructed before suit for the penalty was commenced.

SAME. In a prosecution to recover a penalty for failing to obey an order of the railroad commission to construct a depot within a specified time, which became final and conclusive because not appealed from, it is no defense that the defendant's system of work entailed such delay that the time fixed for performance was unreasonably short, where these facts were well known to the company at the time the order was made and the objection could have been raised on direct appeal from the order.

SAME. In such a case, it is no defense that unprecedented floods delayed the performance, where such floods occurred after the expiration of the time prescribed by the order for performance.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered July 13, 1910, upon findings in favor of the plaintiff, after a trial before the court upon an agreed statement of facts, in an action to recover a penalty for failure to comply with an order of the railroad commission. Affirmed.

*F. V. Brown* and *Frederic G. Dorety,* for appellant.

*The Attorney General* and *Stephen V. Carey, Assistant,* for respondent.

ELLIS, J.—On March 30, 1909, the railroad commission of the state of Washington filed before itself a complaint challenging the sufficiency of the station facilities of the defendant, Great Northern Railway Company, at the various stations on its lines within the state of Washington. After service of the complaint upon the defendant, together with a citation to appear, a hearing was had at which the defendant company appeared by counsel and introduced evidence. Based upon this hearing, an order was made by the commis-

sion requiring the defendant to construct a station building at the town of Chattaroy, in Spokane county. The order required that the building be not less than twelve by forty feet in size, specified other things in connection therewith, and required that the improvements be made within forty days after the service of the order upon the defendant. The order was served on August 2, 1909. No appeal or action to review these proceedings and order in the superior court was taken or had. By a compliance with the order, the station would have been completed not later than September 12, 1909. It is admitted that it was not completed until December 26, 1909.

This action was brought in the superior court in Spokane county against the railroad company by the state, upon the relation of the railroad commission, to recover a penalty under the provisions of § 5 of the railroad commission act (Rem. & Bal. Code, § 8631), for the failure to obey the order and complete the station within the time therein fixed. The case was tried upon an agreed statement of facts before the court without a jury. The court made findings in favor of the plaintiff, and rendered judgment thereon for $1,000 and costs. From that judgment, the defendant has appealed.

The facts upon which the defendant relied for a defense were agreed upon, subject to the plaintiff's objection that they were incompetent, irrelevant, immaterial and constituted no defense. They were as follows: That at the time of the making and service of the order, the commission made and served orders requiring the construction of certain facilities at forty-seven other stations of the defendant in this state; that, prior to service, the defendant was informed of the nature of the orders, and directed its general superintendent to cause the Chattaroy depot to be constructed and the other orders complied with, except those from which appeals were taken to the superior court as provided in the act; that, by the defendant's system then and prior thereto in force, which system is complex and set out in detail in the agreed state-

ment, and under which all improvements were made, different parts of the work were allotted to different departments and officials; that under this system the engineering department in making surveys, plans and estimates, and getting them approved, consumed the time from July 31 to October 4, some sixty-five days; that the purchasing department in ordering, purchasing and shipping materials consumed the time from October 4, to November 15; that the operating department proceeded with the work when the materials arrived; that the plans for the Chattaroy depot were of a small standard type in general use on the Great Northern system and were on file in the engineer's office prior to August 1, 1909, and that eleven days' time was necessary to construct one of these buildings; that the Chattaroy plans were not sent to the St. Paul office for approval until September 4, because it was customary to send in several of such plans and estimates at one time and the resident engineer thought that· was the proper way to do in this instance; that, in the months of November and December, 1909, unprecedented floods caused many injuries to the tracks, bridges and culverts of the defendant's railroad, and carpenters and workmen engaged upon the work of the improvements ordered by the commission were diverted from that work to the repair work made necessary by the floods, which to some extent delayed the completion of the improvements; that, from the time when the general superintendent ordered the plans and estimates on July 31, some of the employees, officials and departments of the defendant were under instructions to proceed with the work of completing all the improvements ordered, including the Chattaroy depot.

The appellant's contention, presented under several heads, when reduced to the ultimate may be fairly stated in two postulates.

(1) It is assumed that in the railroad commission act there is no provision, either expressed or implied, authorizing the commission to fix a time within which duties enjoined

by its orders shall be performed. It is argued that the railroad commission act is a law declaratory of the duties of common carriers in this state; that the commission is a tribunal entrusted with jurisdiction to determine when these duties are not being discharged, empowered to order performance of these duties, and vested with authority to enforce the declaratory parts of the statute. It is admitted that the penal provisions are inserted to prevent disobedience to the authority thus constituted. It is claimed that the authority goes only to a hearing and an order thereon as to what duties shall be performed and the manner of performance, but that no means are provided for either hearing or order as to the time of performance; that the duty being fixed, the obligation to perform begins at once and cannot be dispensed with by any order for a single day; that the fixing of a time within which performance must be made is therefore beyond the power of the commission.

If we have caught counsel's meaning, this is a fair and just compend of their contention. The argument is attractive but specious. Its infirmity consists in the assumption that the fixing of a time within which performance must be made to escape the penalty impairs the obligation to perform. It would be equally as just to say that an order prescribing a manner of performance which in its nature must consume a certain time dispenses with the duty to perform during that time. Neither is true. The order, as to both manner and time, is based upon the antecedent and continuing duty. The admitted power of the commission to determine the duty and enforce performance under penalty carries with it the power and duty to determine manner of performance and time when the penalty for the failure to perform will attach. This is essential to the very genius of the law. The power to compel performance under penalty necessarily implies the power to fix a time beyond which failure to perform will not be tolerated, otherwise the provision imposing the penalty would be nugatory. The railroad commission act

would be a law without sanction. It is no answer to say that the commission cannot by order dispense with the obligation to perform for a single day. The order does not dispense with the obligation. It creates it, in the sense that it defines it and makes the general obligation specific and certain as applied to the given case, both as to manner of performance and time beyond which performance may not lag without incurring the penalty. The obligation exists from the beginning. It is never suspended. The time limit merely invokes the penalty. It is manifest that the statute having imposed the penalty for failure to obey the order, that order must be specific and certain or it would be void so far as enforcement is concerned. The legislature, acting within its constitutional powers, has, by statute, created the railroad commission and entrusted to its jurisdiction the broad and complex field covered by the duties of common carriers in their relation to the public as such. A jurisdiction so vast is of necessity covered in general terms. The dominant purpose of the act is remedial. There is, therefore, conferred by necessary implication every power proper and necessary to the exercise of the powers and duties expressly given and imposed.

"While in the abstract the power to prescribe rules and regulations for common carriers appertains to the legislative department, it is settled that within proper limits such power may be exercised through administrative officers and boards, and that in general such officers and boards have authority to do anything proper and necessary for the complete lawful exercise of the duties imposed upon them.

"Wherever a power is given by statute, everything lawful and necessary to the effectual execution of the power is given by implication of law. *Mitchell v. Maxwell*, 2 Fla. 594; *In re Pearson*, 8 Fla. 496, text 508; *State ex rel. Attorney General v. Gleason*, 12 Fla. 190, text 209; *Ex parte J. C. H.*, 17 Fla. 362; *Ex parte Wells*, 21 Fla. 280; *State ex rel. Smith v. Burbridge*, 24 Fla. 112, text 126, 3 South. Rep. 869. See, also, *Markey v. State*, 47 Fla. 38, text 50, 37 South. Rep. 53, text 56.

"The railroad commissioners are statutory officers whose powers are special and limited. They can exercise only such authority as is legally conferred by express provisions of law or such as is by fair implication and intendment incident to and included in the authority expressly conferred for the purpose of carrying out and accomplishing the purposes for which the offices were established. See *State ex rel. Ellis v. Atlantic Coast Line Ry.*, 51 Fla. 578, 41 South. Rep. 705. Authority that is indispensable to the undoubted valid purposes and objects of remedial statutory provisions, may be inferred or implied from powers expressly given. The difficulty of making specific enumeration of all such powers as the legislature may intend to confer upon railroad commissioners for the regulation of common carriers in the interest of the public welfare, renders it necessary to confer some power in general terms; and general powers given are intended to confer other powers than those specially enumerated. If there is a reasonable doubt as to the lawful existence of a particular power that is being exercised by the commissioners, the further exercise of the power should be arrested; but where power is clearly conferred or fairly implied, and is consistent with the purposes for which the commissioners were established by law, the existence of the power should be resolved in favor of the commissioners so as to enable them to perform their proper functions of government. When action is taken by the commissioners in the exercise of undoubted authority, their administrative discretion will not be controlled by the courts and will not be interfered with where there is no abuse of power or discretion shown. All doubts as to the propriety of means or methods used in the exercise of a power clearly conferred should be resolved in favor of the action of the commissioners in the interest of the administration of the law. Where not expressly or impliedly restrained by law, the commissioners may exercise a wide administrative discretion in the use of the authority lawfully conferred upon them for governmental purposes, the usual limitations being good faith and reasonableness, not wisdom or perfection." *State v. Atlantic Coast Line R. Co.*, 56 Fla. 617, 47 South. 969.

The railroad commission is made by the statute an intermediate tribunal with original cognizance and full power to

hear and determine all questions relative to the duties of common carriers in their relation to the public. Ample provision is made for a hearing on these things. *State ex rel. Oregon R. & Nav. Co. v. Railroad Commission,* 52 Wash. 17, 100 Pac. 179.

The statute declares that the orders of the commission when not appealed from are final and conclusive in future litigation. Unquestionably an order could not be final nor conclusive unless certain as to what it orders done, and the time within which the thing ordered must be done. The jurisdiction of the courts is one of review as to the whole subject so entrusted to the commission, not one of original cognizance. *State ex rel. Railroad Commission v. Oregon R. & Nav. Co., ante* p. 160, 123 Pac. 3. We are constrained to hold that the power to fix the time within which its orders shall be performed is necessarily implied from the plain purpose of the act that the commission shall have complete original jurisdiction with power to enforce its orders. The whole power of regulation and of inquiry for that purpose is imposed in the first instance upon the commission. This includes time of performance as well as manner of performance. There is nothing in the act which precludes a hearing as to time within which the thing ordered can be reasonably performed. The statute in section 3 (Rem. & Bal. Code, § 8629), empowers the commission "after a full hearing" to make its findings and order. The notice of the hearing was notice to the defendant that it might be heard on every matter to which an order on the hearing might, by the express or implied powers of the commission, extend. But it is urged that no evidence as to what would be a reasonable time was taken by the commission. The evidence taken at the hearing before the commission is not before us, and if it were we would be concluded by the statute from reviewing it. The third section of the statute provides:

"Any railroad, express, telephone or telegraph company

affected by the order of the commission and deeming it to be
contrary to law, may institute proceedings in the superior
court of the state of Washington, in the county in which
the hearing before the commission upon the complaint had
been held, and have such order reviewed and its reasonable-
ness and lawfulness inquired into and determined. . . .
Said action of review shall be taken by the said railroad, ex-
press, telephone or telegraph company, affected thereby,
within twenty days after notice of said order, and if said
action of review is not taken within said time, then in all liti-
gation thereafter arising between the state of Washington
and the said railroad, express, telephone or telegraph com-
pany, or private parties, and the said railroad, express, tele-
phone or telegraph company, the said order shall be deemed
final and conclusive. If, however, said action in review is
instituted within said time the said railroad, express, tele-
phone or telegraph company shall have the right of appeal
or to prosecute by other appropriate proceedings, from the
judgment of the superior court to the supreme court of the
state of Washington, as in other civil cases." Rem. & Bal.
Code, § 8629.

The appellant, having failed to avail itself of this statutory
right to the review the order of the commission, is now pre-
cluded from questioning its reasonableness or legality,
whether as to the time of performance or any other matter, in
this action. By the terms of the statute, the order unap-
pealed from is final and conclusive. The presumption is
that it was based upon sufficient evidence.

"Nothing is better settled than, when the legislature spe-
cifically prescribes an adequate legal remedy, that alone is
open to the litigant. *Couchman v. Prather* (1904), 162 Ind.
250; *State ex rel. v. Black* (1906), 166 Ind. 138, and cases
cited; *State ex rel. v. Indiana State etc.* (1909), Ind. 87
N. E. 139. Appellants having failed to avail themselves of
the opportunity presented to assail the order, and having,
without cause, permitted the time for the commencement of
proceedings in the circuit court to elapse, the final order of
the commission as to them must be held conclusive in a
court of equity, except against a cause that renders the order

void." *Southern Indiana R. Co. v. Railroad Commission,*
172 Ind. 113, 87 N. E. 966.

See, also, *State ex rel. Railroad Commission v. Oregon R. &*
*Nav. Co., supra.*

(2) Appellant's other assumption is that the penal section of the railroad commission law (Rem. & Bal. Code, § 8631), was intended only to prevent contumacious disobedience of the orders of the commission, but not to punish mere delay. The argument is that the penalty being fixed by statute, the courts cannot relieve against it even where the failure to perform is the result of subsequently arising contingencies rendering performance impossible; that therefore the court must construe the words "refuse or neglect," as found in the statute, to mean only a wilful or contumacious refusal to obey, in order to avoid the hardship which might result from any other construction. Again the argument is attractive but not sound. It approximates the *petitio principii.* If the statute had declared that the penalty should be imposed for *failure* to perform, there would be force in the argument. The words used, however, are "refuse or neglect." It is manifest that where the failure results from overwhelming force preventing performance, or from unavoidable casualty causing delay, then there is neither refusal nor neglect. In a suit to enforce the penalty, the sole issue is as to whether there has been a refusal or neglect, and upon proof of overwhelming circumstances arising subsequently to the time when the order became final and before the time has expired within which performance was ordered, such proof would negative the charge of refusal or neglect and extend the time or excuse performance. The hardship assumed could never arise, since not every failure to perform entails the penalty, but only failure arising from refusal or neglect. The severity of the penalty is no warrant for the courts to refuse to enforce it. The penalty is a matter of legislative discretion. *Atlantic Coast Line R. Co. v. Coachman,* 59

Fla. 130, 52 South. 377; *Minneapolis & St. Louis R. Co. v. Emmons,* 149 U. S. 364.

It is also urged that the meaning of the word "neglect" must be known from the company the word keeps; that being used in connection with the word "refuse," it is used only "to include within the purview of the act a refusal which could be proven only by proof that performance had been omitted;" in other words, that the word neglect implies a mere rule of evidence in the proof of refusal. The argument is too refined to convince. If the legislature had so intended, it would have been easy to say that unexplained neglect would constitute proof of refusal. The words used are not "refuse *and* neglect," but "refuse *or* neglect." The disjunctive "or" makes it plain that neglect shall incur the penalty as well as refusal. The statute says: "If any railroad . . . shall refuse or neglect to obey or perform any order of the commission" etc., the commission may apply to the superior court to enforce obedience, and the offending party shall be subject to the penalty. The intention is as plain to impose the penalty for neglect as for refusal. There is no room for any other construction. It is manifest also that contumacious or wilful neglect is not alone intended. The word neglect is unaccompanied by any such qualification, and the purpose of the act precludes any such implication. The statute is designed to secure adequate and reasonable accommodation and service for the public. If these are not furnished within the time fixed by the order, it is immaterial whether the failure has resulted from wilful and contumacious refusal or neglect, or from mere sloth or mismanagement. The effect upon the dominant purpose of the statute is the same in either case. Our construction is also in accord with the legal definition of the word neglect, which is:

"Omission or forbearance to do a thing that can be done or that is required to be done. Does not generally imply carelessness or imprudence; simply, an omission to do or

perform some work, duty, or act." Anderson, Dictionary of Law, p. 703.

See, also, 2 Bouvier, Law Dictionary, p. 478; Black, Law Dictionary (2d ed.), p. 810. The general purpose of the statute must control and determine the meaning of the word "neglect" as found in the penal section. *Warren v. United States*, 58 Fed. 559.

It will not do to say that performance at any time before suit, though long after the time fixed by the order, is sufficient. That would, be to reward with immunity inexcusable delay, place a premium on procrastination, and compel the commission to sue on the heels of every order. Such a construction would strike the word "neglect" from the statute.

The facts relative to appellant's system of work entailing delay, relied upon by the appellant as an excuse for non-performance within the time fixed by the order, were as well known to the appellant when the order was served as now. If the appellant believed that the time fixed in the order was unreasonably short, it should have appealed to the courts for a review of the order. Having failed to do so, it is bound by the order, which is declared by the statute "final and conclusive" in the absence of such appeal. The facts relied upon constitute no defense to this action, however effective they might have been upon a direct review.

The unprecedented floods, occurring long after the expiration of the time fixed for performance in the order, were in no sense material. They could not excuse prior delay. Had these floods occurred within the forty days prescribed by the order for performance, evidence thereof would have been competent on the issue as to whether there had been any refusal or neglect, which is the sole issue in a suit to enforce the penalty. The finding that the station building was not completed within forty days after the service of the order, in the absence of any finding that the failure was occasioned by subsequently arising circumstances rendering performance impossible within that time, was sufficient to sustain the

judgment.    The case made by an order unappealed from and unreviewed, hence final by the very terms of the statute, and unperformed without sufficient excuse, is ample to sustain the judgment, which is therefore affirmed.

DUNBAR, C. J., CROW, and MORRIS, JJ., concur.