[No. 27319. Department Two. February 9, 1939.]

THE STATE OF WASHINGTON, *on the Relation of Northeast Transportation Company, Respondent,* v. FERD J. SCHAAF *et al., Appellants.*[1]

*The Attorney General, Don Cary Smith, Assistant (Will M. Derig,* of counsel), *E. K. Murray, Ralph A. Horr, Tworoger & Steinberg,* and *Ben A. Maslan,* for appellants.

*Rummens & Griffin* and *Frank E. Hammond,* for respondent.

[1]Reported in 86 P. (2d) 1112.

SIMPSON, J.—This case involves the right of the department of public service to revoke and cancel a certificate of public convenience and necessity issued to and held by the Northeast Transportation Company.

January, 1938, appellant R. C. Johnson filed a complaint with the department of public service, alleging that he was a resident of Seattle, Washington, and had been operating motor vehicles for passenger service between the city of Seattle and East 125th street and Sandpoint way under certificate No. 471, standing in the name of the Northeast Transportation Company, and that the certificate had been at all times held by it for the use and benefit of complainant, who had been the actual operator of the service under the certificate.

It was also alleged that a majority of the directors and officers of the Northeast Transportation Company were endeavoring to claim rights under the certificate to the prejudice of the complainant, and that ninety-five per cent of the people served on the route covered by certificate No. 471 were in favor of a continuation of the service by the complainant. It was further alleged that the directors of the company were endeavoring to institute operations over the route named in the certificate, but were inexperienced and unfit to conduct such service; and that certificate No. 471, now standing in the name of the Northeast Transportation Company, should, in the public interest, be canceled and a new certificate issued in the name of complainant, R. C. Johnson. The complaint was accompanied by a formal application for a new certificate of convenience and necessity to render passenger service over the routes and between the points covered by certificate No. 471.

An answer was filed by the respondent corporation, and thereafter a hearing was had, followed by the department's findings of fact, conclusions, and order.

At the conclusion of the hearing, the department entered an order revoking and canceling the certificate held by respondent, and provided for the issuance of a new certificate of public convenience and necessity to appellant R. C. Johnson covering the route described in the original certificate held by the respondent. Thereafter, respondent, by virtue of a writ of review, secured a trial in the superior court of Thurston county, which resulted in a judgment reversing the order of the department. This appeal followed.

Appellants urge error on the part of the trial court in setting aside the order of the department.

The pertinent facts may be summarized as follows: The original application for a certificate of convenience and necessity was made by Frank Pierce on behalf of the people in the district to be served by the bus service subsequently authorized by the certificate. Certificate No. 471 permitted the holder to carry passengers between a point in Seattle and East 125th street and Sandpoint way, which is north of the city limits of Seattle. Later, the certificate was issued to respondent in this case.

The company was without sufficient funds to carry on the bus business, and was conducting the operations largely to accommodate the people living in the outlying districts. The financial situation resulted in the execution of a written agreement January 1, 1928, between itself and appellant Johnson, which provided, among other things:

"That the Northeast Transportation Company has employed R. C. Johnson as Superintendent of Transportation of its operations under Certificate No. 471 Department of Public Works, and any extension thereof, for the period of five years from the first day of January, 1928.

"That said company agrees to pay for the services of said Johnson as Superintendent of Transportation all

of the net profits arising from Passenger Service under Certificate No. 471. It being understood and agreed that

"In calculating the net profits all expenses whatsoever incurred in said operation, including the original cost of vehicles and equipment, the rent, repair and maintenance of same; the cost of drivers, gas, oil, bonds, licenses etc., shall be included in operating expenses and are to be borne by said Johnson.

"Said Johnson agrees to devote his time exclusively to the purposes of the operation of the said company and do all things that are necessary to make the operation successful; . . . "

January 2, 1933, a new contract was entered into, which, aside from the dates, was identical with the one to which we have just referred. When the last contract expired January 2, 1938, appellant Johnson was not reemployed. He then took the busses, which had been operated under the company's certificate, and operated them himself until stopped by threat of arrest made by the prosecuting attorney of King county. January 2, 1938, respondent secured other busses and continued to operate over the route specified in the certificate.

The department is a creature of statute, and its powers, duties, and jurisdiction are limited to what the statute prescribes.

In the case of *Puget Sound Nav. Co. v. Department of Public Works*, 152 Wash. 417, 278 Pac. 189, this court quoted with approval the following:

" 'There is no presumption of jurisdiction in favor of a body exercising a limited or statutory jurisdiction, such as an industrial board. Nothing is taken by intendment in favor of such jurisdiction but the facts upon which the jurisdiction is founded must appear in the record. The record filed in return to the writ does not show what notice was given to plaintiff in error or what method of informing plaintiff in error of the proceeding was adopted or regarded proper by the

industrial board, and the record fails to show jurisdiction over plaintiff in error or any authority of the board to hear and decide the question presented by the petition.' *Tazewell Coal Co. v. Industrial Comm.,* 287 Ill. 465, 123 N. E. 28.

" 'The industrial commission, now the state industrial board, being an inferior tribunal, whose powers exist solely by statute, the facts conferring jurisdiction cannot be established by presumption; they must be conclusively shown. The claim can only be enforced by compliance with the statute. *Gates v. State,* 128 N. Y. 221, 227, 228, 28 N. E. 373; *Missano v. City of New York,* 160 N. Y. 123, 54 N. E. 744, dissenting opinion 160 N. Y. 133, 54 N. E. 745; *Diehl v. Becker,* 227 N. Y. 318, 125 N. E. 533; *Karr v. Village of Alfred,* 148 App. Div. 435, 132 N. Y. Supp. 1088; *Twonko v. Rome Brass & Copper Co.,* 224 N. Y. 263, 120 N. E. 638.' *Cheesman v. Cheesman,* 203 App. Div. 533, 196 N. Y. Supp. 820."

Rem. Rev. Stat., § 6389 [P. C. § 234-5], which gives the commission, now department of public service, the right to revoke certificates of convenience and necessity, reads:

"The commission may, at any time, by its order duly entered after a hearing had upon notice to the holder of any certificate hereunder, and an opportunity to such holder to be heard, at which it shall be proven that such holder willfully violates or refuses to observe any of its proper orders, rules or regulations, suspend, revoke, alter or amend any certificate issued under the provisions of this section, . . . "

The public service law (Laws of 1921, chapter 111, p. 338, as amended by Laws of 1935, chapter 184, p. 883), was enacted only for the purpose of regulation and supervision of the public utilities named in the act. It did not give to the department of public service any authority to decide questions between individuals who contended for the ownership of a certificate issued by the department. *Carlsen v. Cooney,* 123 Wash. 441,

212 Pac. 575; *Northern Pac. R. Co. v. Schoenfeldt*, 123 Wash. 579, 213 Pac. 26.

The right of respondent to operate its busses over the route designated in the certificate of convenience and necessity is a valuable one and must not be infringed upon, save strictly in accordance with law, and then only when existing facts justify such infringement. *North Bend Stage Line v. Denney*, 153 Wash. 439, 279 Pac. 752.

 A consideration of the case, as disclosed by the evidence presented at the hearing before the department, convinces us that the order revoking respondent's certificate was not justified. The record of that hearing discloses many controversies between appellant Johnson and the directors of respondent corporation, and the stockholders and the directors, and contains considerable testimony relative to the wishes, desires, and objections of the people served by the respondent. The only violation of the department's orders that is urged in appellant's briefs is that respondent allowed the busses to be operated by Johnson contrary to the provisions of an order made at the time the original certificate was granted. That order, dated July 1, 1926, issued by the department, stated:

"The proposal to have the actual operations carried on by third parties is contrary to the declared policy of this Department and will not be allowed under any circumstances."

Many inspections of the books and business methods of the respondent were made by the department during the years it was in business, but no word or instruction was ever given to respondent relative to its operations, though the inspectors did at various times indicate approval of the records kept by respondent corporation, which included the information concerning its relations with appellant Johnson.

We have carefully considered the findings, conclusions, and order of the department made after the hearing, and while the department found that the respondent did not operate the busses over the route covered by the certificate, the department did not find that the mode of operation constituted a violation of any departmental rule or order.

Appellant contends, however, that the department is not estopped to invoke the order made eleven years ago by its actions during that period of time, and cites 21 C. J. 1191, § 193, as follows:

"It is settled that the public, whether exercising its functions through a state or the federal government, or through a municipal corporation, county, town, township, or other governmental agency or instrumentality, cannot be estopped by unauthorized, illegal, or fraudulent acts, admissions, conduct or statements on the part of their officers and agents, even though benefits to the public have accrued and been accepted."

In *Gehr v. Ferry County*, 179 Wash. 68, 36 P. (2d) 71, this court stated:

"An estoppel can be created against a municipal corporation only by one authorized to act or speak in its behalf."

Conceding the validity, force, and effect of the statement made when the original certificate was issued, we are of the opinion that the department itself did, by its actions in approving the reports of its inspectors, give assent to the operating methods of respondent.

The order was one made by the department and could have been rescinded at any time. Having the power to make the order, the department plainly had the right to rescind it, and by reason of the acquiescence of the department in the nonobservance for over a decade of that portion of the departmental order requiring actual operations by respondent, it is estopped

to assert the alleged violation of the order, No. M. V. 1817, of July 1, 1926, in respect to respondent.

In its findings of fact, the department recited the history of the respondent corporation and all of the events leading up to the hearing, and then made the following conclusion:

"Of course the primary concern of the Department in proceedings of this character is to assure the people of the community safe and adequate transportation at reasonable cost. We have discussed the internal affairs of this corporation at considerable length because the conditions which are disclosed have a vital bearing upon the question of public service.

"The Company was organized and for many years was operated as a community enterprise and in order to carry out the community's function of aiding in the establishment and development of adequate transportation facilities. The element of profit was entirely lacking from the picture and did not enter into the conduct of the affairs of the corporation. The record shows also that after the system had become well established the stockholders evidenced the intent and purpose of turning the corporation over to Johnson.

"It was not until the present management secured control of the corporation that the idea of a corporate profit seems to have been formed. It is clear that this purpose is opposed by most of the people in the community and is contrary to the desires particularly of the people who financed the enterprise during its organization and lean years.

"The recent actions and present attitude of the directors and other officers of the corporation betray a desire to get the ownership into their own hands now that the operation is financially attractive. The methods used by the corporation officers and their entire course of conduct merit our severest condemnation, and justify the animosity of the people of the community.

"We cannot escape the conclusion that even though the certificate is held in the name of the corporation it was really the intention of everybody concerned that

the corporation should hold title as a sort of trustee for Johnson, the actual operator. Furthermore, we are convinced that in view of the present financial condition of the corporation and its total lack of the good will of the people of the community, its prospects of giving adequate and safe service at reasonable cost are dark indeed.

"In the light of the record we must find that Northeast Transportation Company is not fit and able to conduct operations under certificate No. 471.

"We are also convinced that the community and its transportation system have developed sufficiently to justify bringing to an end the rather novel and now unsatisfactory set-up under which the operations have been conducted. Unless we are to sacrifice the interests of the people of the community and give them small hope of safe and adequate service at reasonable cost in the future we should cancel certificate No. 471 now held in the name of the corporation and grant a certificate to Johnson to operate between Seattle and East One Hundred Twenty-fifth Street and Sandpoint Way. Johnson has demonstrated his ability to conduct the operations successfully from both his own viewpoint and that of the community. Practically all of the people who are vitally interested want Johnson's service. We would be false to our real function and purpose as a regulatory body if we ruled otherwise."

The order, in so far as it relates to respondent, recited:

"IT IS ORDERED That Certificate of Public Convenience and Necessity No. 471, standing in the name of the Northeast Transportation Company, and authorizing an auto transportation operation be, and the same hereby is, revoked and cancelled."

Relative to hearings before a department, this court said in *Great Northern R. Co. v. Department of Public Works,* 161 Wash. 29, 296 Pac. 142:

"In determining the question, the courts are empowered to inquire, first, whether the facts as found by the department are sufficient, in themselves, to

justify its order, and, second, if it finds that they are thus sufficient, to inquire whether there is any substantial evidence on which the findings can be based."

We conclude that the facts shown by the evidence received and the findings of the department do not warrant a determination that respondent willfully violated any provision of law relative to the operation of its busses.

The judgment of the trial court is affirmed.

BLAKE, C. J., BEALS, MILLARD, and GERAGHTY, JJ., concur.