[No. 27533.   Department Two.   July 20, 1939.]

NORTH BEND STAGE LINES, INC., *Respondent*, v. FERD J.
SCHAAF, *as Director of The Department of
Public Service, et al., Appellants.*[1]

[1]Reported in 92 P. (2d) 702.

*The Attorney General, Don Cary Smith, Assistant,* and *Neal, Brodie & Trullinger,* for appellants.

*Poe, Falknor, Emory & Howe,* for respondent.

BEALS, J.—North Bend Stage Lines, Inc., a corporation, is, and for many years has been, engaged in business within the state of Washington as a common carrier of passengers by motor vehicle, operating under certificate of public convenience and necessity No. 100. It operates between Seattle and a point a little southeast of North Bend. In addition to its regular passenger operations, it has engaged in a charter party service, making special contracts for the transportation of private parties from place to place, as the particular contract of charter required.

Washington Motor Coach Company, a corporation, is also engaged in business as a common carrier of passengers, a portion of its main lines following a part of the route followed by the North Bend line. On suggestion from the department of public service, the North Bend line filed with the department a tariff showing its charter party rates, whereupon Washington Motor Coach Company filed a complaint against the tariff as filed, and the matter was heard before the department. At this hearing, the North Bend line contended that the department had no jurisdiction over its charter rates and service. The department ruled that it had jurisdiction, that the tariff filed was not proper, and directed the North Bend line to cease rendering charter service until it had filed a tariff which should be approved by the department.

After entry of the departmental order embodying the ruling of the department, the North Bend line brought the order before the superior court for review, with the result that the court sustained its contention and entered findings of fact and conclusions of law in favor of the North Bend line, followed by a judgment reversing the order of the department and dismissing the complaint of Washington Motor Coach Company. From this order, Washington Motor Coach Company and the director and other members of the department of public service of the state of Washington have appealed to this court.

Appellants have joined in briefs filed before this court, and assign error upon the findings of fact and conclusions of law entered by the trial court; upon the refusal of the court to enter findings of fact and conclusions of law as proposed by appellants; upon the entry of the judgment signed by the trial court; and upon the court's refusal to render judgment in their favor. Appellants also assign error upon the ruling of the court to the effect that the department of public service and the court were without jurisdiction over the charter service rendered by respondent; and upon the reversal by the trial court of the order which the department had entered.

There is but one question involved upon this appeal, to-wit: Does the department of public service of Washington have jurisdiction over passenger charter service rendered by automobile transportation companies, which hold certificates of convenience and necessity issued by the department?

It appears that there is no statutory definition of charter service, as the term is applied to the facts of this case, but clearly it means the hiring by an individual or group of persons of the exclusive service of a motor vehicle and its driver, for a certain desig-

nated journey. Appellants contend that this service is a common carrier service to the public generally, and falls within the provisions of chapter 111, Laws of 1921, p. 338 (Rem. Rev. Stat., § 6387 [P. C. § 234-3] *et seq.*), the auto transportation act of this state. Respondent contends that the service is not a common carrier service, but is simply a matter of private contract between the owner of the stage, who is also the employer of the driver, and the person or persons who desire the transportation. The record clearly shows that the service rendered by respondent is not confined to the route over which its admittedly common carrier stages proceed, but covers any service over any route agreed to by the contracting parties.

Chapter 111, Laws of 1921, p. 338 (Rem. Rev. Stat., § 6387 [P. C. § 234-3] *et seq.*), an act referring to the subject of transportation by motor vehicles, and conferring certain powers upon the then public service commission of the state of Washington, must be studied in connection with the question here presented.

Section 3 of the act referred to (Rem. Rev. Stat., § 6389 [P. C. § 234-5]) vests the commission with certain power and authority, and after providing for the supervision and regulation of auto transportation companies (operating between fixed termini or over regular routes), vests the commission with authority

". . . to supervise and regulate auto transportation companies in all other matters affecting the relationship between such auto transportation companies and the traveling and shipping public."

Section 3 also vested the commission with authority to prescribe rules and regulations for the government of auto transportation companies. The department of public service has, from time to time, pursuant to this authority, promulgated rules and regulations for the

control of auto transportation companies, including rule No. 37-A, which reads as follows:

"No auto transportation company operating for the transportation of persons between fixed termini or over regular routes under a certificate of convenience and necessity issued by the department of public works, shall directly or indirectly employ its equipment for hire, either on a charter basis or in any other manner whatsoever, for the transportation of persons over the public highways of the state except upon and over the route or routes authorized by its certificate. Nothing in this rule shall prevent one auto transportation company leasing any part of its equipment to another auto transportation company for temporary use by it in its regular business over its authorized route."

It was the rule quoted which appellant department found that respondent had ignored, and which appellant department sought to enforce in the departmental order which respondent brought for review before the superior court. The department was of the opinion, and appellants contend here, that the language above quoted from the act of 1921 vests the department with authority to regulate and control charter stage operations such as those conducted by respondent. Concerning these operations, the trial court found:

"The court finds that the findings and order of said department of public service are erroneous in that petitioner in engaging in such charter or special trip operations is not acting as an 'auto transportation company' as that phrase is defined in chapter 111 of the Laws of 1921; in that said department has no authority to regulate or attempt to regulate the charter or special trip operations of petitioner or to require petitioner to file a tariff in respect thereof; in that said department in enacting that portion of rule 37-A hereinabove referred to exceeded the authority conferred upon it by chapter 111 of the Laws of 1921."

Appellant department is a statutory body, and has only such power and authority as is vested in it by the statute. *Wishkah Boom Co. v. Greenwood Timber Co.,* 88 Wash. 568, 153 Pac. 367; *Northern Pacific R. Co. v. Denney,* 155 Wash. 544, 285 Pac. 452; *Elkins v. Schaaf,* 189 Wash. 42, 63 P. (2d) 421.

Chapter 111, Laws of 1921, § 1 (Rem. Rev. Stat., § 6387 [P. C. § 234-3]), subd. (d), reads as follows:

"The term 'auto transportation company' when used in this act means every corporation or person, their lessees, trustees, receivers or trustees appointed by any court whatsoever, owning, controlling, operating or managing any motor propelled vehicle not usually operated on or over rails used in the business of transporting persons, and, or, property for compensation over any public highway in this state between fixed termini or over a regular route, and not operating exclusively within the incorporated limits of any city or town: Provided, that the term 'auto transportation company,' as used in this act, shall not include corporations or persons, their lessees, trustees, receivers or trustees appointed by any court whatsoever in so far as they own, control, operate or manage taxicabs, hotel buses, school buses, motor propelled vehicles, operated exclusively in transporting agricultural, horticultural, or dairy or other farm products from the point of production to the market, or any other carrier which does not come within the term 'auto transportation company' as herein defined."

We are of the opinion that contracts entered into by an auto transportation company, whereby such company makes a special contract with an individual or group of individuals to transport him or them on a certain specified trip, the vehicle not being, while on that trip, required to transport the public at large, do not constitute an operation within the statutory definition of the act as above quoted.

We find no ground for holding that respondent,

by entering into incidental charter contracts for the carriage of passengers, has in any way interfered with or impaired its regular transportation business as a common carrier. Appellant department has control over such operations, and might well forbid any unfair practice by which the public might be misled and caused to believe that vehicles operating under private charters were, in fact, being used as public carriers. Operations under private charter are not conducted between fixed termini, nor upon any regular schedule. Each contract results from an agreement between the parties, covering one particular journey.

By § 3, of the act of 1921, it is made the duty of the department "to supervise and regulate every auto transportation company in this state as such." Section 1 of the act, subdivision (d), *supra,* defines "auto transportation company," and contains a proviso excluding certain persons from the purview of the term, and, after enumerating operations which are not included within the statutory definition of the term, excludes "any other carrier which does not come within the term 'auto transportation company' as herein defined."

Careful consideration of the statute convinces us that the department has no jurisdiction over incidental passenger charter operations conducted by an auto transportation company such as respondent. In our opinion, the statute clearly negatives the theory that appellant department enjoys any such statutory jurisdiction.

■ Appellants rely upon the construction placed by the interstate commerce commission upon the Federal motor carrier act of 1935. This act expressly includes charter operations, a portion of the Federal act reading as follows:

"Any common carrier by motor vehicle transporting passengers under a certificate issued under this chapter may transport in interstate or foreign commerce to any place special or chartered parties under such rules and regulations as the Commission shall have prescribed." Title 49, U. S. C. A., § 308 (c), 49 Stat. 552, § 208 (c).

The jurisdiction of the interstate commerce commission over such activities is clearly vested by the portion of the act quoted, and decisions of the interstate commerce commission construing the Federal act are not in point upon the question here to be determined.

Chapter 184, Laws of 1935, p. 893, § 22 (Rem. Rev. Stat., Vol. 7A, § 6382-22 [P. C. § 234-13½w]), cited by appellants, reads in part:

"It shall be unlawful for any person to operate any vehicle at the same time in more than one class of operation, except upon approval of the department and a finding that such operation will be in the public interest."

This law refers to motor vehicles used in the transportation of property, and not those operating as common carriers of passengers. The same is true of Title 49 U. S. C. A., § 310, 49 Stat. 554, § 210.

Appellant department has undoubted authority to protect the public against activities on the part of an auto transportation company which are, in fact, common carrier business, though attempted to be disguised as matters of private charter.

The superior court correctly construed the statute with which we are here concerned, and the judgment appealed from is accordingly affirmed.

GERAGHTY, ROBINSON, and SIMPSON, JJ., concur.

BLAKE, C. J. (dissenting)—It seems to me the decision in this case rests on a false hypothesis. It seems to hinge upon some inherent right of the respondent

to transport passengers over the public highways for gain. No one has any such inherent right in the use of the public highways. *Stephenson v. Binford,* 287 U. S. 251, 53 S. Ct. 181, 77 L. Ed. 288, 87 A. L. R. 721. In that case the court said:

"It is well established law that the highways of the state are public property; that their primary and preferred use is for private purposes; and that their use for purposes of gain is special and extraordinary, which, generally at least, the legislature may prohibit or condition as it sees fit."

Whatever rights respondent has derive from the state and are circumscribed by its certificate of necessity which entitles it to operate a regular service between Seattle and North Bend. By that certificate, it is not authorized to engage in a charter service at all—at least outside the termini designated. Yet it claims the right to maintain such service without let or hindrance simply because the legislature has not specifically designated charter service as coming within the regulatory power of the department of public service. While the powers of the department of public service are strictly statutory, it is an unwarrantedly narrow construction of the statute which denies the department control and supervision over charter service engaged in by auto transportation companies. The statute (Rem. Rev. Stat., § 6389 [P. C. § 234-5]), after defining the powers of the department over all transportation companies with some particularity, provides that it shall have power and authority—

". . . to supervise and regulate auto transportation companies in all other matters affecting the relationship between such auto transportation companies and the traveling and shipping public."

Of the extent of powers such as these, this court, in *State ex rel. Railroad Commission v. Great Northern R. Co.,* 68 Wash. 257, 123 Pac. 8, said:

"The legislature, acting within its constitutional powers, has, by statute, created the railroad commission and entrusted to its jurisdiction the broad and complex field covered by the duties of common carriers in their relation to the public as such. A jurisdiction so vast is of necessity covered in general terms. The dominant purpose of the act is remedial. There is, therefore, conferred by necessary implication every power proper and necessary to the exercise of the powers and duties expressly given and imposed."

It seems to me that, under any reasonable interpretation of the above-quoted portion of Rem. Rev. Stat., § 6389 [P. C. § 234-5], the department of public service has, by necessary implication, the power and authority to regulate and control charter service by auto transportation companies. Any other construction of the statute makes charter service an activity without the law. Obviously, such an anomaly was never contemplated by the legislature. For, if anything is certain, it is that the legislature has attempted to fully control and regulate the use of the highways by auto transportation companies for gain.

I dissent.