[Nos. 29292, 29293. *En Banc.* July 18, 1944.]

THE STATE OF WASHINGTON *on the Relation of Public Utility District No. 1 of Okanogan County, Appellant,* v. THE DEPARTMENT OF PUBLIC SERVICE *et al., Respondents.*

THE STATE OF WASHINGTON *on the Relation of Public Utility District No. 1 of Douglas County, Appellant,* v. THE DEPARTMENT OF PUBLIC SERVICE *et al., Respondents.*[1]

[1]Reported in 150 P. (2d) 709.

*E. K. Murray* and *Houghton, Cluck & Coughlin,* for appellants.

*The Attorney General* and *R. A. Moen, Assistant,* for respondents Department of Public Service *et al.*

*Paine, Lowe, Davis & Russell* and *H. E. T. Herman,* for respondent Washington Water Power Co.

STEINERT, J.—Two public utility districts, located in adjoining counties, filed with the department of public service of the state of Washington their separate complaints, each seeking to compel a power company operating in the same area to file with the department a schedule showing the rate at which it would furnish to the particular public utility district the power required by it in the operation of its alleged electrical properties. The power company demurred to each of the complaints, and the demurrers were sustained by the department. Upon proceedings by writs of review, in which the department of public service, its departmental heads, and the power company were named as defendants, the superior court, after a hearing, filed a memorandum opinion and entered judgment sustaining the action of the department. The public utility districts thereupon appealed to this court, and on the appeal the two causes have been consolidated for hearing and judgment.

Since the allegations of appellants' pleadings stand admitted by the demurrers, we look to the complaints for a delineation of the facts. The two complaints are virtually the same in narrative and the facts, as stated therein respectively, are substantially as follows:

The public utility districts, appellants herein and referred to hereinafter simply as the "districts" or as "appellants," are municipal corporations. The Washington Water Power Company, the principal respondent herein, to which we shall hereinafter refer simply as the "power company" or as the "respondent company," is a corporation, owning,

operating, and managing an electrical system for hire in this state, and furnishing electrical service to ultimate consumers and also to retailers of public power. The power company holds itself out to the public as being in the business of selling electrical energy at wholesale for purposes of resale to both privately and publicly owned electrical utilities.

Sometime prior to 1943, the districts instituted in the respective superior courts condemnation proceedings in which the districts sought to acquire all electrical works, plants, and facilities then owned and operated by the power company within the territory of the respective districts, excepting certain facilities and rights not material here. In the event the districts ultimately acquire these properties, they intend to furnish electricity to private persons and to public and private corporations.

These condemnation actions were consolidated for trial in the superior court for Okanogan county, and, upon the trial, verdicts were returned on January 2, 1943, fixing the values of the properties sought to be condemned at $2,227,-531 and $139,165, respectively. Judgments on the verdicts were entered February 4, 1943. From those judgments, appeals were taken to this court, in the one case by both the district and the power company, and in the other by the district alone. The appeals by the districts were only from those portions of the judgments which allowed the power company interest on the verdicts at six per cent per annum but made no provision for offsetting concurrent net earnings against such interest. It may be stated parenthetically that on April 7, 1944, which was subsequent to the time the appeals in the instant cases were taken, this court rendered its opinion in the foregoing condemnation actions, consolidated, affirming the judgments therein on the appeal of the power company and modifying the judgments on the appeals of the districts to the extent of allowing to the districts offsets of earnings against interest between the date of the verdicts and the date of payment of the awards (*Public Utility Dist. No. 1 of Douglas County v. Washington Water Power Co.* consolidated with *Public*

*Utility Dist. No. 1 of Okanogan County v. Washington Water Power Co.,* 20 Wn. (2d) 384, 147 P. (2d) 923). However, that circumstance does not affect our consideration of the issues now before us.

In paragraph three of each of the complaints in the present cases it is alleged that

"It is necessary for the district to determine as soon as possible whether it can and whether it should pay into court the amount of the award and take title to the properties or whether it must abandon the proceeding. If the properties are acquired, the acquisition will be financed entirely by the issuance of revenue bonds which will be paid for only out of the earnings derived from the properties. Before prospective buyers of revenue bonds can determine whether they will buy the bonds proposed to be issued, and before they can determine what rate of interest the bonds should bear, they must ascertain the probable net earnings of the properties under operation by the district, and they must decide whether these earnings are sufficient to provide for payment of the principal of and interest on the bonds and whether there is sufficient excess over bare requirements to make the bonds salable to their clients and to the general public. To determine these probable net earnings they must know what the district will have to pay for electric power.

"The company [power company] is the only source from which the district can obtain electric power for the operation of the properties being condemned. If the district is able to finance the award through revenue bonds and determines that it should acquire the properties at the price fixed by the award, the district will of necessity purchase from the company all the electric power required to operate the condemned properties."

There being on file no rate of the power company applicable to the type of service which would be required by the districts, these respective municipal corporations on June 21, 1943, requested the power company to file with the department of public service a schedule of the rates at which it would furnish to the districts the power required by them in the operation of the electrical properties included in the condemnation proceedings. The power com-

pany refused, or neglected and failed, to file such schedule of rates.

Paragraph five of each complaint then alleged:

"The longer the district goes without knowing the wholesale rate, the more delay there will be in financing the acquisition and in the district's taking over operation of the properties. The verdict will bear interest at the rate of six per cent per annum from the time the verdict was returned, and it may be decided by the Supreme Court of the State of Washington that the company is also entitled to keep the earnings of the properties received prior to the time when the district pays into court the amount of the award and takes title to the properties. Any further delay in filing the rate will therefore deprive the district of the earnings of the properties during the period of delay. [In *Public Utility Dist. No. 1 v. Washington Water Power Co.*, *supra*, this court has, as stated before, in the meantime decided that earnings may be offset against interest.]"

Upon this set of facts, as pleaded in the complaints, the districts prayed that the department of public service require the power company to file immediately a schedule showing the rates at which it will furnish to the districts the power required by them in the operation of the electrical properties of the power company which are included in the condemnation proceedings and to set forth any other supplementary conditions under which it will furnish such power in the event the districts acquire such electrical properties by virtue of the condemnation proceedings.

It is to be noted that the complaints do not allege that the appellant districts (1) were in position, at the time of requesting rate schedules, to receive electrical *service* from the respondent power company or from any one else; or (2) had previously demanded electrical *service* from the respondent company; or (3) were reasonably entitled to such electrical *service;* or (4) would accept such electrical *service;* or (5) that the power company contemplated furnishing the *type of service* with reference to which appellants were seeking to require the company to publish rates.

The demurrers filed by the respondent company before

the department of public service were based on three grounds: (1) That the department has no jurisdiction of the subject matter of the proceedings brought before it; (2) that the complaining districts had no legal capacity to sue or to file their complaints; and (3) that the complaints did not state facts sufficient to constitute causes of action or to entitle the districts to the relief demanded by them. The orders entered by the department of public service sustaining the demurrers to the complaints were general in form, reciting no specific ground for the ruling. The superior court, on review, held that the demurrers were properly sustained, on all three grounds stated therein.

It will be of aid in our discussion of the issues to have before us the exact positions taken by the respective parties on the appeal. The appellant districts contend, as shown by their statement of the question here involved, that the respondent power company, which is a privately owned public electrical utility, is obligated to file with the department of public service a schedule of the rates at which it will sell and furnish to the appellant districts wholesale power for the service of those distribution properties of the power company contemporaneously being condemned by the districts, whenever the districts request such filing of schedule, even though at the time of such request the districts had not yet acquired title to the properties being condemned but had prosecuted such condemnation proceedings to verdicts and judgments in the superior court and were conducting appeals therefrom in the supreme court, and when at the same time it appears that the power company is the only source of such needed power and that the districts will purchase all of their electrical energy from the power company if the districts ultimately elect to acquire the properties now being condemned.

The respondents public service department and power company contend, as shown by their statements of the question here involved, that the department does not have authority, on complaint of a public utility district, to compel a privately owned public utility company to file a tariff or schedule naming a rate at which it will sell and

furnish power to such public utility district, when it appears by the complaint filed with the department that the public utility district has not yet acquired any properties, does not yet have facilities for accepting service even if the rate should be established, has made no request for, nor agreed to take, service, but desires to know the rate, not for the purpose of purchasing power under the prospective rate, but simply for informational purposes as an aid to the public utility district in promoting the sale of its proposed revenue bonds with which it will purchase the properties sought to be condemned, in the event the public utility district should ultimately elect to acquire such properties.

We are cognizant of the fact that appellants' objective in these actions is a matter of serious importance to them, for, as stated in their brief, if their present request for an anticipant schedule of rates be denied, it may well represent their last attempt to obtain knowledge of the prospective cost of power and, as a result, may, for a long time at least, delay the financing, acquisition, and operation of the properties they seek to acquire. We are also aware that the question here involved is of equal importance and of far-reaching concern to the respondent power company and, to some extent, to the respondent department of public service. In our study of the problem submitted to us for decision, we are without the aid of any precedent, for counsel say that they have been unable to find any case which squarely presents, discusses, and decides the question raised on the appeals, and our independent search has brought none to light. In our discussion, we shall proceed as did the trial court; that is, by inquiring whether the complaints are vulnerable to the demurrers on the grounds therein assigned.

The first ground assigned is that the department of public service had no jurisdiction of the subject matter of the proceedings brought before it by the appellants. It is well settled in this state, as elsewhere, that a public service commission, such as the department of public service in this state, is an administrative agency created by statute and

as such has no inherent powers, but only such as have been expressly granted to it by the legislature or have, by implication, been conferred upon it as necessarily incident to the exercise of those powers expressly granted. *Wishkah Boom Co. v. Greenwood Timber Co.*, 88 Wash. 568, 153 Pac. 367; *Puget Sound Nav. Co. v. Department of Public Works*, 152 Wash. 417, 278 Pac. 189; *Northern Pac. R. Co. v. Denney*, 155 Wash. 544, 285 Pac. 452; *State ex rel. Northeast Transp. Co. v. Schaaf*, 198 Wash. 52, 86 P. (2d) 1112; *North Bend Stage Lines v. Schaaf*, 199 Wash. 621, 92 P. (2d) 702; 43 Am. Jur. 701, Public Utilities and Services, § 193; 51 C. J. 36, Public Utilities, § 78.

In *Northern Pac. R. Co. v. Denney, supra*, it is stated:

"The department of public works [now department of public service], being purely a creature of statute, has only such powers as are expressly conferred upon it, or such powers as are necessarily incident to the powers expressly conferred upon it by statute."

■ The paramount object of the legislature in adopting the public service commission law (chapter 117, p. 538, Laws of 1911, Rem. Rev. Stat., § 10339 [P. C. § 5528] *et seq.*) and in creating the department of public service was to secure for the public safe, adequate, and sufficient utility services at just, fair, reasonable, and sufficient rates. See Rem. Rev. Stat., §§ 10345, 10362, 10371, 10382 [P. C. §§ 5536, 5553, 5562, 5573].

■ Appellants cite four sections of the public service commission law as being applicable here with respect to the power company's duties and obligations as to rates and utility service. The first of these sections to be considered is Rem. Rev. Stat., § 10369 [P. C. § 5560], which provides:

"Every gas company, electrical company or water company, engaged in the sale and distribution of gas, electricity or water, shall, upon reasonable notice, furnish to all persons and corporations who may apply therefor and be reasonably entitled thereto, suitable facilities for furnishing and furnish all available gas, electricity and water as demanded."

It will be noted that, while the power company is a public utility, within the classification of that section of the statute, its duty thereunder to furnish electricity is limited to those persons "who may apply therefor and be reasonably entitled thereto." The petitions in the present cases do not allege that the districts have "applied for" or have demanded *electricity,* and, since it clearly appears from the pleadings that they are not in a position to accept such service even if it were furnished, they cannot be said to be "reasonably entitled thereto." What the districts are here applying for or demanding is a schedule of rates, not electrical service. Consequently, that section is of no aid to the appellants in their present objective.

The next two sections to be considered are Rem. Rev. Stat., § 10363 [P. C. § 5554], which provides:

"Every gas company, electrical company and water company shall file with the commission [now department of public service] and shall print and keep open to public inspection schedules in such form as the commission may prescribe, showing all rates and charges made, established, or enforced, *or to be charged or enforced,* all forms of contract or agreement, all rules and regulations relating to rates, charges or service, used or to be used. . . ." (Italics ours.)

and Rem. Rev. Stat., § 10365 [P. C. § 5556], which provides:

"No gas company, electrical company or water company shall charge, demand, collect or receive a greater or less or different compensation for any service rendered *or to be rendered* than the rates and charges applicable to such service as specified in its schedule filed and in effect at the time. . . ." (Italics ours.)

These sections of the statute require the power company to file schedules "showing all rates and charges made, established, or enforced, or to be charged or enforced" and forbids it to "charge, demand, collect or receive" for "any service rendered or to be rendered" any greater, less, or different sum than those which are applicable under its schedules "filed and in effect at the time."

Appellants do not contend that the power company has not filed schedules of all rates charged, made, established,

or enforced, and all that it intends to charge, make, or enforce. They impliedly concede that the power company has performed its full duty in those respects. It is also apparent from the allegations of the complaints that the districts are not now customers of the power company, are not seeking to become customers, and may never become such. It is therefore difficult to understand how or why the power company can, or should, be required to file schedules of rates for a character of service that it has never supplied, does not propose to supply, and for which no application has been made, and which, should it establish the rates therefor, it may never be called upon to furnish.

Appellants stress, and rest their cases upon, the phrase "or to be charged or enforced" and the phrase "or to be rendered" appearing in the foregoing sections of the statute. They interpret these phrases as having reference to, or at least as including, situations where, as here, the filing of a rate schedule is sought by a person or corporation who is not now, but may possibly become, a prospective customer in the sense of being at some future time ready, able, and willing to accept the service.

We do not so interpret that language of the statutes. We think the phrases quoted have reference simply to those situations where the utility company proposes to change its established rates, or to inaugurate rates for types of service not previously furnished, or to put into effect some new charge or rule of the company. Appellants' interpretation seems to us not only to give a strained construction to the statute but also to envisage situations and conditions which are illusory at present and may be wholly abortive in the future. When Rem. Rev. Stat., § 10364 [P. C. § 5555], is read in connection with the two sections last above quoted, it becomes quite clear that the meaning and scope of the two phrases are as we have defined them. It is also to be noted that § 10365, quoted above, has reference to an unlawful charge, demand, or collection of compensation for service; whereas, in this case, the power company has

not charged anything to the districts and has not demanded or collected anything from them.

■ ■ In support of their contentions, appellants cite a number of decisions rendered by state regulatory commissions, appearing in the new series of Public Utility Reports. It is quite true that, in some of those decisions, the public service commissions of the particular states established rates to be charged by a public utility for service to be supplied to a public corporation which did not yet fully own, or had not yet constructed, the properties to be served. However, in none of those cases was the question raised or decided as to whether the public service commission had the *power,* in such situations, to establish rates or to compel the filing of schedules thereof. In each instance, the litigant parties either assumed that the commission had such power under the state statute, or else, for their own convenience, submitted the question of rates to the commission for ready decision. In any event, the department of public service of this state cannot itself determine the question of its jurisdiction, nor can it assume that it has jurisdiction when it does not have it, for the question of jurisdiction is a judicial one, to be decided only by the courts.

For the reasons above given, we are of the opinion that Rem. Rev. Stat., §§ 10363 and 10365, afford appellants no basis for the relief sought by them.

■ The next statute cited and relied upon by the appellant districts is Rem. Rev. Stat., § 10390 [P. C. § 5581], which provides, in part, as follows:

"Whenever the commission [now department of public service] shall find, after a hearing had upon its own motion, or upon complaint as herein provided, that the rates or charges demanded, exacted, charged or collected by any gas company, electrical company or water company, for gas, electricity or water, or in connection therewith, or that the rules, regulations, *practices* or contracts affecting such rates or charges are unjust, unreasonable, unjustly discriminatory or unduly preferential, or in any wise in violation of the provisions of the law, or that such rates or charges are insufficient to yield a reasonable compensation for the service rendered, the commission shall determine

the just, reasonable, or sufficient rates, charges, regulations, *practices* or contracts to be thereafter observed and in force, and shall fix the same by order as hereinafter provided. . . .

"Whenever the commission shall find, after hearing, that any rules, regulations, measurements, or the standard thereof, *practices, acts* or services of any such gas company, electrical company or water company are unjust, unreasonable, improper, insufficient, inefficient or inadequate, or that any service which may be reasonably demanded is not furnished, the commission shall fix the reasonable rules, regulations, measurements or the standard thereof, *practices, acts* or service to be thereafter furnished, imposed, observed and followed, and shall fix the same by order, or rule, as hereinafter provided." (Italics ours.)

It is apparent that this section simply empowers the department of public service to conduct hearings, make findings, and determine questions with respect to the justice or injustice, the reasonableness or unreasonableness, and the lawfulness or unlawfulness of the rates or charges, or the rules, regulations, practices, or contracts affecting such rates or charges, "demanded, exacted, charged or collected" by the company furnishing such utility service. This statute in no sense or particular purports to authorize the department to require such utility company to furnish schedules of rates for a new kind of service to persons or corporations who have made no request for service, who have not shown themselves to be reasonably entitled to service, and who are in no position to accept the service if offered to them at a specified, or any other, rate.

Appellants argue that the refusal or failure of the power company to file rate schedules constitutes unreasonable "acts" or "practices," as those terms are employed in the foregoing section of the statute. The word "acts," as therein used, denotes affirmative, voluntary action or performance, as distinguished from mere omission. The word "practices" conceivably has a broader significance and may include inaction or failure to act, as well as affirmative action; however, the term "practices" connotes habit or custom, something done or left undone, with a degree of regularity, not

occasionally or sporadically. See 2 Words and Phrases (Perm. ed.) pp. 1 to 5; 33 Words and Phrases (Perm. ed.) pp. 179 to 180; *Public Service Commission [West] v. Sun Cab Co.*, 160 Md. 476, 154 Atl. 100.

In the case at bar, the power company has done no "act" nor has it inaugurated or pursued any "practice" within the contemplation or inhibition of the statute. It has simply refused to file a rate schedule for a type of service which it is not furnishing, nor proposing to furnish, to a corporation which has no property, has not demanded service, has not agreed to take the service, and would be unable to use the electrical power if it were supplied.

■ Aside from the four sections of the statute referred to above, there is no statute, so far as we have been advised, which authorizes the department of public service to compel the power company to file a schedule of rates as demanded by the appellants. In the absence of statutory authority, the department has no power to act. Furthermore, in our opinion, the matter of fixing "prospective" rates such as the districts now request is in no sense incidental or necessary to the supervisory and regulatory powers which the statute has expressly conferred upon the department of public service.

The sum and substance of the allegations of appellants' complaints is that they desire the information sought by them in order that they may determine whether they shall take title to the properties now being condemned, or whether they shall abandon the proceedings, and, in the former contingency, that they may be better able to finance the acquisition of the properties by a sale of their revenue bonds. It is not the function of the department of public service to aid in the creation of new public utilities; its function is simply to supervise and regulate those which are in existence in the state and come under its authorized jurisdiction. *Richland Gas Co. v. Hale,* 169 La. 300, 125 So. 130. See, also, *State ex rel. Northeast Transp. Co. v. Schaaf,* 198 Wash. 52, 56, 86 P. (2d) 1112, 1115.

We hold that the demurrers to the complaints were correctly sustained on the first ground assigned.

■ The second ground of the demurrers is that the complaining districts had no legal capacity to sue or to file their complaints. The reason assigned by the trial court for sustaining the demurrers on this ground was that "the complainant [district] is not now possessed of any property or facilities to enable it to render public service nor is it financed for such purpose and therefore has no legal capacity to maintain the action."

The appellant districts were organized under chapter 1, p. 3, Laws of 1931 (Initiative to the Legislature No. 1, Rem. Rev. Stat., §§ 11605-11616 [P. C. §§ 4498-11—4498-22]). By § 6(k) of the act (Rem. Rev. Stat., § 11610k [P. C. § 4498-16]), such municipal corporations are authorized to sue and be sued in any court of competent jurisdiction. By Rem. Rev. Stat., § 10422 [P. C. § 5607], which is part of the public service commission law, it is provided, among other things, that complaint may be made by any person or corporation, or by any body politic or municipal corporation, by petition or complaint in writing, setting forth "any act or thing done or omitted to be done by any public service corporation in violation, or *claimed to be in violation,* of any provision of law or of any order or rule of the commission [department]." (Italics ours.) It would seem that, under these two sections of the statute, the districts would have "legal capacity" to initiate and maintain a proceeding or action upon a complaint setting forth the required elements. Whether the complaint so filed is sufficient in law is, of course, quite a different thing. That objection, however, must be raised by demurrer on the ground that the pleading does not state facts sufficient to constitute a cause of action.

Respondents contend that the complaints are demurrable on the ground of appellants' legal incapacity to sue, because their present actions constitute, in effect, merely an attack upon the reasonableness of the rates or charges made by the power company, and, under the proviso contained in Rem. Rev. Stat., § 10422, no complaint for unreasonableness of rates or charges can be entertained by the department, except on its own motion, unless the com-

plaint is signed by the mayor, council, or commission of the city or town in which the company complained of is engaged in business, or by not less than twenty-five consumers or purchasers of such utility service. Concededly, the complaints were not signed in the manner specified by the proviso.

However, we do not agree with respondents' premise that this is essentially a rate case coming within Rem. Rev. Stat., § 10422. The districts are not attacking the reasonableness of any existing charge or rate, but are simply demanding that a schedule of rates be filed with the department. In fact, no rate or charge for the prospective service has ever been filed, and if one should be filed it may never give rise to a complaint that it is unreasonable. The mere fact that the districts are not now possessed of any property or facilities with which to render public service does not affect their legal capacity to sue or be sued. We therefore hold that the complaints are not demurrable upon the ground of appellants' incapacity to sue.

The third, and final, ground of the demurrers is that the complaints do not state facts sufficient to constitute causes of action. The contents of the complaints have already been set forth at length and in detail. We have also pointed out the particulars in which the complaints are lacking. It is unnecessary to repeat those details here. As expressed by the trial court, appellants are not seeking relief because of any charge, rate, rule, or regulation exacted or imposed by the power company, but simply request certain information, advisory in its nature, "to enable the complainants to perfect their organization by financing the same." That information may indeed be of considerable aid to the appellants in their endeavor to raise the revenue necessary to acquire the properties and proceed with their operation, but that circumstance imposes no legal duty on the power company to supply such information, where no utility *service* is demanded of it, where the inquirer is not now ready, able, and willing to accept such service, and where such service could not be accepted and used even if the information sought were given. If appellants' argu-

ment in this particular were sound, then by similar reasoning it could be urged that the information was necessary and compulsory in order to enable the districts to determine whether they should institute condemnation proceedings in the first instance, or even whether the districts should be organized at all, for the matter of ultimate revenues would always be a vital factor in the determination of those questions. Our conclusion is, that the complaints did not state facts sufficient to constitute causes of action.

For the reasons hereinbefore given, the judgments are affirmed.

ALL CONCUR.